STATE of North Dakota, Plaintiff and Appellee,

v.

Brian Stuart JORDHEIM, Defendant and Appellant.

Cr. No. 930153.

Supreme Court of North Dakota.

Dec. 2, 1993.

Ronald W. McBeth (argued), Asst. State's Atty., Wahpeton, for plaintiff and appellee.

Cash H. Aaland (argued), Fargo, for defendant and appellant.

MESCHKE, Justice.

Brian Jordheim appeals from a conviction for driving with an excessive blood-alcohol content. We affirm.

After midnight on October 6, 1992, Police Officer Ross Renner arrived at the scene of a two-car collision close to Wahpeton. The investigating officers found Jordheim in the driver's seat of one of the cars. He was injured but conscious, and the officers loaded him into an ambulance. Officer Renner accompanied Jordheim to St. Francis Medical Center in Breckenridge, Minnesota.

Renner testified that, enroute to the hospital, he noticed a strong odor of alcohol from Jordheim. Upon examination, he saw Jordheim's bloodshot and watery eyes. Based on these observations, the fact of an accident, and Jordheim's location in the car, Renner arrested Jordheim for driving under the influence of alcohol.

At the hospital, Jordheim consented to a blood test. Renner testified that he opened a sealed blood-test kit, read the directions on the enclosed Form 104, and instructed the laboratory technician on the steps directed in the form. Jordheim's blood was drawn into a vacutainer tube by technician Pam Ditch, who testified that she used the disinfectant and container from the kit, inverted the tube several times, and handed the filled container back to Renner. She completed and signed the form with the kit. Renner testified:

> I received the container. I sealed it. I initialed the seal and everything. I filled out the rest of the proper paper work. I

put it back in the canister. I sealed the canister.

Renner then took the canister back to the accident scene and handed it to a fellow officer. The next day, another local deputy delivered the canister to the State Toxicologist's office in Fargo.

Thomas Hoesly, a chemist in the State Toxicologist's office, testified that he received the canister directly from the deputy, opened the container, and broke the intact seal over the stopper on the blood tube. He then completed the check-in information on Form 104, followed the approved method of blood testing, and completed and signed Form 107 reporting a blood-alcohol content of 0.13%.

Over Jordheim's objection, the trial court admitted into evidence the report of the blood-alcohol test. After a trial without a jury, the court convicted Jordheim of driving under the influence of alcohol. Jordheim moved for a new trial. The court denied the motion. Jordheim appealed.

■ To begin, we narrow our review of Jordheim's conviction by several procedural rulings. First, Jordheim challenges for the first time in his appellate brief the jurisdiction of the Wahpeton City police to arrest him outside the city limits. The prosecution responds that, if this had been raised at trial, the State would have shown that these officers were properly deputized to act in the county. *See State v. Beilke*, 489 N.W.2d 589 (N.D.1992). We do not review questions raised for the first time on appeal.

■ In his motion for new trial, Jordheim renewed his objection to the evidentiary use of his blood-alcohol test, but did not contest probable cause for his arrest. A motion for new trial is not necessary for appellate review. *State v. Heart*, 334 N.W.2d 479 (N.D. 1983). When a new trial is moved, however, "the party making such a motion is limited on appeal to a review of the grounds presented to the trial court." *Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D.1986). We explained:

> *See, e.g.*, Explanatory Comments to Rule 35, N.D.R.App.P., concerning the scope of appellate review, which states that "[t]he rule does not change existing appellate

practice." This is true even though we have, by Rule 28, N.D.R.App.P., eliminated the assignment-of-errors requirement because the purpose of the rule derived from that requirement is to allow the lower court, in its decision on whether to grant a new trial, to review *all* alleged errors. *Andrews,* 387 N.W.2d at 728 n. 18 (citations omitted). This long-standing rule applies equally to criminal appeals. *State v. Empting,* 21 N.D. 128, 128 N.W. 1119, 1121–22 (1910); *State v. Glass,* 29 N.D. 620, 151 N.W. 229, 230–31 (1915); *State v. Krantz,* 55 N.D. 683, 215 N.W. 157 (1927); *State v. Potter,* 60 N.D. 183, 233 N.W. 650, 653 (1930); *State v. Colohan,* 69 N.D. 316, 286 N.W. 888, 891 (1939). The question of probable cause to arrest Jordheim has not been preserved for review.

On the blood-alcohol test, Jordheim disputes that the prosecution proved fair administration by compliance with the State Toxicologist's approved methods, and argues that an adequate chain of custody over the blood sample was not proved. We conclude that the prosecution satisfied statutory requirements, and that the report of Jordheim's blood-alcohol test was properly received into evidence.

The evidentiary use of blood-alcohol test reports is regulated by NDCC 39–20–07. The statute purposely eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report. *State v. Schwalk,* 430 N.W.2d 317, 322 (N.D.1988). The statute balances procedural efficiency and scientific reliability by allowing scrupulously completed documents as evidence in lieu of lengthy testimony. NDREv 901(b)(10) endorses this legislative streamlining to authenticate alcohol-test evidence.

■ The report of a blood-test must be admitted under NDCC 39–20–07(8), even without the testimony of the chemist performing the test, if the proper foundation is developed. There are four main foundational elements in NDCC 39–20–07 that must be either documented or demonstrated for the admission of the test report. First, the sample must be properly obtained. Second, the blood test must be fairly administered. Third, the method and devices used to test the sample must be approved by the State Toxicologist. Finally, the blood test must be performed by an authorized person or by one certified by the State Toxicologist as qualified to perform it.

■ These foundational elements can be demonstrated by properly completed and certified documents alone. For a blood-alcohol test, the technician who drew the blood need not testify, if a written statement of the technician is introduced showing that the sample was drawn according to the methods approved by the State Toxicologist. NDCC 39–20–07(5) and (10). Fair administration, chain of custody, and compliance with the State Toxicologist's methods can be proved through a completed and certified Form 104. *McNamara v. North Dakota Dep't of Transp.,* 500 N.W.2d 585, 589–90 (N.D.1993); *State v. Schwalk,* 430 N.W.2d at 322. The approved methods, devices, and persons certified to administer the test can be shown by introducing copies of records filed by the State Toxicologist and certified by the clerk of court. NDCC 39–20–07(7). *See also Erickson v. Director, North Dakota Dep't of Transp.,* 507 N.W.2d 537 (N.D.1993) (inspection requirements of NDCC 39–20–07(6) do not apply to laboratory blood testing equipment approved under (5)). When properly completed, these documents furnish the foundation to admit the blood-test report. Under the statute, testimony disputing the facts contained in these documents, if properly completed, will generally affect the weight given the blood-test result and not its admissibility.

We review for the first time in this case the use of a revised Form 104 (6–92) to satisfy the foundational elements of NDCC 39–20–07. An earlier version of this form was held deficient because it lacked a place for the sample collector and the submitter to certify that the State Toxicologist's directions were followed. *See State v. Reil,* 409 N.W.2d 99, 103 n. 4 (N.D.1987). This deficiency was noted in later decisions by this court, too, but has been corrected in the current version of the form.

As revised, Form 104 has three sections that correspond to the conduct of the three

people who normally participate in administering the blood test. The top half of the form includes the name of the person whose blood is drawn, and a list of directions for both the specimen collector and the recipient of the sample at the laboratory. The bottom half of the form contains a similar list for the specimen submitter. The submitter, who will usually be a police officer, is directed to retain this half of Form 104 in police records, undoubtedly for later evidentiary use. These lists on the form obviate the *Reil* deficiency by enabling the actors to complete, sign, and certify that the State Toxicologist's directions have been followed.

■ Given the detailed directions in Form 104 (6–92), it is difficult to imagine a case when certified compliance with them will not also furnish facial evidence that the sample was properly obtained and the test fairly administered, if the test was the result of a valid arrest or other precondition for its administration. *See Wilhelmi v. Director of Dep't of Transp.,* 498 N.W.2d 150 (N.D.1993); *State v. Hansen,* 444 N.W.2d 330 (N.D.1989). Testimony about compliance with Form 104 is only necessary for the prosecution's case-in-chief if the documentary evidence does not satisfy all four elements. Although the prosecution did not offer complete documentation here, as it easily could have, the evidence as a whole shows compliance with the directions of Form 104, and the blood-alcohol test was properly admitted.

■ If the documentary evidence and the testimony of the participants in administering the test do not show scrupulous compliance with the methods approved by the State Toxicologist, the statutory mode of authentication cannot be used. In that case, the general rule of NDREv 901(a) applies and, a majority of this court holds, "the State must establish that there were sufficient indicia of reliability in the collection and submission of the blood sample" through expert testimony that establishes fair administration of the test. *State v. Schwalk,* 430 N.W.2d at 324; *State v. Nygaard,* 426 N.W.2d 547, 549 (N.D. 1988). In this case, the prosecution proved the essential elements of NDCC 39–20–07(5), and expert evidence about fair administration was unnecessary.

The prosecution's exhibit 5 includes the top half of a completed Form 104 with the signed statement of Ms. Ditch, as required by subsection (10) of NDCC 39–20–07, and includes the completed and certified statement by Mr. Hoesly that certifies when and how he received the labeled blood tube. This exhibit also includes the completed report (Form 107) by Mr. Hoesly that he followed the approved method of blood-alcohol analysis, and that Jordheim had a blood-alcohol content of 0.13%. Exhibit 3 lists approved chemical-test operators, certified by the clerk of court, and shows Thomas Hoesly was approved. Exhibit 2 lists approved chemical testing devices and shows that the device used by Mr. Hoesly, described in Form 107, was approved.

■ The bottom half of Form 104 was not offered by the prosecution. Without this completed form, the documents introduced did not show fair administration of Jordheim's blood test. To overcome this omission, Officer Renner testified that he performed the steps required in the form. As in *McNamara,* 500 N.W.2d at 590, this testimony, coupled with the documentary exhibits, established fair administration through scrupulous compliance with Form 104.

Still, Jordheim argues that exhibit 5 was not relevant on the question of compliance with the State Toxicologist's approved methods because the prosecution failed to establish what methods are approved. Jordheim argues:

> The state did not offer any certified records to establish the directions by the State Toxicologist for blood sample collection and submission. Such an exhibit must be offered into evidence to establish directions before compliance with said directions can be ascertained.

To illustrate how simply this can be done, Jordheim included a copy of the entire blank Form 104 (6–92), approved by the State Toxicologist on July 6, 1992, as filed with and certified by the Richland County clerk of district court.

■ The fact that Form 104 represents the State Toxicologist's approved method for blood collection and submission is not subject

to reasonable dispute, and therefore is properly the subject of judicial notice. *Hadland v. Schroeder*, 326 N.W.2d 709, 713 (N.D. 1982). At oral argument, Jordheim was given the opportunity to be heard on the propriety of taking notice of this fact. NDREv 201(e). Our rules of evidence empower this court to take judicial notice of the acts of public officials. *See* NDREv 201(f), Explanatory Note; *City of Fargo v. State*, 260 N.W.2d 333, 339 (N.D.1977).[1] Form 104 (6–92) contains the method approved by the State Toxicologist.

Jordheim's final argument is that the State failed to show a chain of custody for the blood sample because neither the deputy who delivered it to the State Toxicologist's office, nor the officer that Officer Renner gave it to at the scene, testified. "While it is not necessary for the State to call all persons who have handled the blood sample in order to introduce the test results, it is incumbent upon the State to show that the sample tested is the same one originally drawn from the defendant." *State v. Reil*, 409 N.W.2d at 104. As held in *State v. Nygaard*, 426 N.W.2d at 548, the sample when tested must be in substantially the same condition as when it was drawn from the accused.

 Form 104 has several functions. First, the certification of the laboratory technician "ensures that the scientific accuracy and reliability of the test are not affected by improper collection or preservation of the blood sample." *State v. Schwalk*, 430 N.W.2d at 322. Second, the certifications of the specimen submitter and receiver provide "an evidentiary shortcut for establishing chain of custody" by ensuring the specimen is received in the same condition as it was submitted. *Id.*

 Here, Officer Renner testified he did "everything" required by Form 104, and "filled out the rest of the proper paper work." Form 104 directs that the specimen submitter label the specimen and "affix[ ] completed label over the top and down the sides of the blood tube." Renner testified that he initialed this "seal." Thomas Hoesly certified in exhibit 5 that the blood sample was in "a labeled blood tube." The certification on the form bearing Jordheim's name that the chemist received the labeled blood tube evidences that the label on the tube was the same one affixed by the specimen submitter.

This compliance with Form 104 adequately demonstrates the connection between the taking of the blood sample and its receipt at the State Toxicologist's office. *State v. Nygaard*, 426 N.W.2d at 549. Therefore, the prosecution proved the chain of custody for the blood sample from Officer Renner to the testing chemist.

This blood test was properly obtained and fairly administered by authorized persons in compliance with the State Toxicologist's method approved in revised Form 104(6–92). Therefore, the results of the blood test were properly admitted as evidence under NDCC 39–20–07, and we affirm.

VANDE WALLE, C.J., and SANDSTROM, J., concur.

NEUMANN, Justice, concurring in result.

I concur in the result. I am uncomfortable, however, with that part of the majority opinion which reactivates the admittedly long-standing rule that a criminal defendant who has made a motion for a new trial is limited on appeal to a review of the grounds presented in that motion. In support of that position, the majority cites cases decided in 1915, 1927, and the 1930's. In 1913 a criminal defendant had one year in which to bring

1. Prosecutors should not be encouraged by this opinion to expect that a court will always take judicial notice of an official act that they failed to prove. As Chief Justice VandeWalle pointed out in *State v. Sivesind*, 439 N.W.2d 530, 534 (N.D. 1989) (VandeWalle, Justice, concurring), "it seemingly would have been a simple matter to request a short recess, obtain the form [from the clerk's office], admit it into evidence, and proceed to question the officer as to whether or not he complied" with the directions in Form 104. Although a court has discretion under NDREv 201(c) to judicially notice an official act, neither this court nor the trial court is obligated to do so. When the prosecution fails to prove an essential foundational element for a blood-alcohol test, the usual result is that the test will not be admitted into evidence, and the remaining evidence may be insufficient for conviction.

his appeal. C.L.1913, § 10994. In 1925 that was changed to six months, and in 1943, after the last of these cases was decided, it was still three months. R.C.1943, § 29–2808. Today, a defendant must file his notice of appeal or his motion for new trial within ten days. N.D.R.Crim.P.Rule 37(b)(1); N.D.R.App.P.Rule 4(b)(1).

Under the practice prior to this opinion, filing a notice of appeal within ten days, while burdensome, has at least been possible, because the notice of appeal need not contain specifications of error. N.D.R.Crim.P. Rule 37(c). I fear, however, that the majority opinion will effectively eliminate motions for new trials in criminal cases, because defense counsel will be reluctant to limit their client's appeal only to those grounds which occur to them within ten days, without the benefit of research, reflection, and a review of the record.

The majority opinion seems particularly unfair when the State, which normally finds itself appealing from single issues such as an order to suppress, is afforded thirty days within which to file its notice of appeal. N.D.R.Crim.P.Rule 37(b)(2); N.D.R.App. P.Rule 4(b)(2).

Based on the foregoing, I would reach Jordheim's argument regarding probable cause for arrest. I would, however, still affirm. I believe the record reflects more than enough evidence to support a finding of probable cause.

LEVINE, J., concurs.