STATE of North Dakota, Plaintiff and Appellant,

v.

Roger Eugene ZINK, Defendant and Appellee.

Cr. No. 930398.

Supreme Court of North Dakota.

July 18, 1994.

Kristine Jensen Paranica, Asst. State's Atty., Bismarck, for plaintiff and appellant.

Darold A. Asbridge, Bismarck, for defendant and appellee.

LEVINE, Justice.

The State appeals from the trial court's order dismissing the charge against Roger Zink. We reverse and remand.

Zink was charged in the alternative with driving with a blood-alcohol concentration of at least 0.10% or while under the influence of intoxicating liquor, in violation of NDCC § 39–08–01(1)(a) and (b). He moved to dismiss the charge, to suppress the blood-test results, or to continue the case, each on the ground that the chemist who analyzed Zink's blood, James Hidding, had moved from North Dakota and was unavailable to testify. The State offered the results of a second blood test conducted by a second chemist, and Zink raised the same argument to any subsequent tests. The trial court granted a thirty-day continuance and directed the State to attempt to locate Hidding. After the thirty days had passed and the State was unable to determine Hidding's whereabouts, the tri-

al court granted Zink's motion to dismiss, based on its implied suppression of the blood-test results. The State appeals from the dismissal under NDCC § 29–28–07(1) and we review the suppression issues raised by the State under NDRAppP 35(c).

On appeal, the State raises three issues: 1) whether the trial court abused its discretion in dismissing the charge against Zink based on its suppression of the blood-test results; 2) whether the trial court abused its discretion in suppressing the results of the first blood test based on the unavailability of the chemist; and 3) whether the trial court abused its discretion in suppressing the results of a second blood test based on a break in the chain of custody.[1]

■ The State first argues that the trial court abused its discretion in dismissing the charge based on its suppression of the blood-test results. We agree.

"A pretrial motion to dismiss cannot be converted into a summary trial of evidence, thereby depriving the fact finder, whether jury or judge, of its exclusive function of determining factual questions which have a bearing on a defendant's guilt or innocence." *State v. Hammond*, 498 N.W.2d 126, 129 (N.D.1993). We have cautioned trial courts that pretrial motions to dismiss which raise factual questions determinative of the general issue of guilt or innocence, such as insufficiency of the evidence, generally should not be granted in pretrial proceedings. *See State v. Zeno*, 490 N.W.2d 707, 709 (N.D.1992); *State v. O'Boyle*, 356 N.W.2d 122, 124 (N.D.1984); *State v. Kolobakken*, 347 N.W.2d 569, 570 (N.D.1984).

Here, by dismissing the portion of the charge alleging that Zink drove while under the influence of intoxicating liquor, the trial court effectively weighed the evidence and concluded that the State's evidence was insufficient to prove the charge. "The dismissal was in effect a premature determination of the question of guilt or innocence made before the submission of any evidence." *O'Boyle, supra* at 125. We reverse the trial

court's dismissal of that portion of the charge alleging that Zink drove while under the influence of intoxicating liquor.

■ Although we conclude that the trial court properly suppressed the results of the first blood test, we also reverse the trial court's dismissal of that portion of the charge alleging that Zink drove with a blood-alcohol content of 0.10% or more because we conclude that the trial court prematurely suppressed the results of the second blood test.

■ For a conviction under NDCC § 39–08–01(1)(a), driving with a blood-alcohol content of 0.10% or more, the State must produce test results showing a blood-alcohol content of 0.10% or more. *See, e.g., State v. Kimball*, 361 N.W.2d 601, 603 (N.D.1985). Admissibility of blood-test results is a preliminary question left to the discretion of the trial judge. *E.g., State v. Erickson*, 517 N.W.2d 646, 648 (N.D.1994). Once the results are admitted, the jury may assess their weight. *Id.*

In suppressing the results of the first blood test, the trial court apparently was persuaded by Zink's argument that Zink has the right to subpoena the chemist who analyzed his blood sample. NDCC § 39–20–07(9) says:

"Notwithstanding any statute or rule to the contrary, the defendant in any criminal proceeding may subpoena, without cost to the defendant, the person who conducted the chemical analysis referred to in this section to testify at the trial on the issue of the amount of alcohol, drugs, or a combination thereof in the defendant's blood, breath, saliva, or urine at the time of the alleged act."

The State argues that by using "may," the statute provides only that the defendant has an "opportunity," not a right, to subpoena the chemist. In other words, the statute is satisfied if the defendant is able to make an attempt, whether successful or not, to subpoena the chemist. We find this argument unpersuasive. "Must" would not make sense in the context of the statute because the

1. The blood-test results, although included in the State's appendix to its appellate brief, are not part of the record on appeal.

defendant is not required to subpoena the chemist. "May" simply gives the defendant the option to subpoena the chemist to testify at trial. When the defendant chooses to subpoena the chemist, "it seems clear that the statute contemplates the presence at trial of the chemical analyst when he or she is properly summoned." *State v. Ganje*, 481 N.W.2d 227, 229 (N.D.1992).

In *Ganje*, we stated that "ordinarily, under NDCC § 39–20–07(9), the defendant is entitled to have the analyst present at trial." *Id.* at 230. We went on to hold that the chemist's unavailability on a particular day, when there was no indication that the chemist would not be available on another day, did not warrant dismissal. However, we clearly distinguished that case from one where the chemist was truly unavailable to testify at trial. *Id.* [comparing case at hand to *State v. Presbuch*, 366 N.W.2d 794 (N.D.1985), in which we affirmed dismissal, where defendant was living in Europe and thus was unavailable for trial, on ground of unnecessary delay in bringing defendant to trial].

Section 39–20–07(9) gives the defendant the right to have the chemist testify at trial when properly summoned. *Ganje, supra* at 230. When, as here, the chemist is unlocatable and thus truly unavailable to testify, suppression of the test results is justified.

■ The State also argues that suppression is improper where the witness's unavailability is not attributable to state action. We are unpersuaded that the unavailability of a former employee of the State Toxicologist's office is not due to at least some negligence on the part of the State, albeit perhaps not on the part of the State's Attorney's office.[2] Certainly, the State Toxicologist's office could require chemists leaving its employ to provide a forwarding address. Therefore, we need not address the issue of whether suppression is appropriate when the chemist's unavailability is wholly unattributable to the State.

■ Although the State offered the results of a second blood test conducted by a second chemist, the trial court apparently suppressed the results of the second test because Hidding's testimony, in light of the suppression of the records of the first blood test, would be necessary for the State to establish chain of custody for the second test.[3] We disagree.

■ We have held that the State can prove chain of custody through a completed and certified Form 104. *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). We have also said that "[w]hile it is not necessary for the State to call all persons who have handled the blood sample in order to introduce the test results, it is incumbent upon the State to show that the sample tested is the same one originally drawn from the defendant" and that the sample is in substantially the same condition. *State v. Reil*, 409 N.W.2d 99, 104 (N.D.1987); *see also K.E.N. v. R.C.*, 513 N.W.2d 892, 895 (N.D.1994); *Jordheim, supra* at 883. To meet the chain-of-custody requirement for purposes of admission of the evidence, the State must persuade the trial court that "in reasonable probability the article has not been changed in any important respect from its original condition." *Reil, supra* at 103 (quoting *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154–55 (5th Cir.1981) (quoting *United States v. Albert*, 595 F.2d 283, 290 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979))).

We believe that the trial court abused its discretion in impliedly suppressing the results of the second blood test and dismissing the charge without giving the State the opportunity to establish chain of custody through means other than Hidding's testimony.

■ Hidding's unavailability does not, in itself, justify suppression of the results of the

---

2. The State asserted in its pretrial report that in attempting to locate Hidding, it "check[ed] driver's license records in several states and [made] several telephone calls." At oral argument, the State admitted that it did not check with any credit reporting agencies or other state government agencies.

3. The trial court did not expressly suppress the results of the second blood test based on chain of custody. However, both parties treat the issue as a chain-of-custody problem in their briefs, and we address their arguments as such.

second blood test. Section 39–20–07(9) gives the defendant the right to subpoena the chemist who conducted the analysis of the defendant's blood sample. However, the statute contemplates that the analysis will be used to show the defendant's blood-alcohol content. *See* NDCC § 39–20–07 [providing that "evidence of the amount of alcohol, drugs, or a combination thereof in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible"]. It does not require that the defendant have the right to subpoena a chemist when that chemist's analysis is not used to show the defendant's blood-alcohol content. Therefore, Hidding's availability to testify was not required for the admission of the results of the second blood test.

Hidding's testimony or the records of what he did with the blood sample might have been one way for the State to establish chain of custody. *See* NDREv 104(a) [providing that in determining preliminary questions of admissibility, trial courts generally are not bound by the rules of evidence]. However, it was not the only possible way for the State to establish chain of custody. At oral argument, the State indicated that had it been given the opportunity, it would have presented evidence to establish foundation for the admission of the second test results. Depending on the evidence presented by the State, the State may have been able to persuade the trial court that "in reasonable probability the [blood sample] has not been changed in any important respect from its original condition." Therefore, the trial court prematurely suppressed the results of the second blood test based on chain of custody.

Reversed and remanded.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.