2008 ND 94

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Tyson SCHWAB, Defendant and Appellant.**

Nos. 20070276, 20070277.

Supreme Court of North Dakota.

May 15, 2008.

Christopher James Nyhus, Assistant State's Attorney, Mandan, ND, for plaintiff and appellee.

Jodi L. Colling, Dickson Law Office, Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1]  Tyson Schwab appeals the district court's criminal judgments after a jury found him guilty of driving under the influence and of carrying a loaded firearm in a motor vehicle.  Schwab contends the district court erred by not allowing the forensic scientist who performed the chemical testing on his blood to testify at trial.  We affirm the district court's judgment related to the weapons charge.  We reverse the judgment regarding his driving under the influence and remand for a new trial.

## I

[¶ 2]   On March 18, 2007, a vehicle driven by Schwab was stopped for a broken taillight.  When speaking with Schwab, the officer noted an odor of alcohol emitting from the vehicle.  The officer could not determine the source of the odor.  Schwab denied drinking that night.  The officer asked Schwab to accompany him to the patrol car.  Schwab consented and sat in the passenger side of the squad car.  The officer was then able to smell alcohol on Schwab's breath.  When confronted again about the odor, Schwab admitted to drinking three beers that night.  Schwab consented to field sobriety testing and was given the horizontal gaze nystagmus test, the walk and turn test, the one leg stand test, the alphabet test and the counting backwards test.  He passed all the tests except for the horizontal gaze nystagmus test, which may have been improperly administered.

[¶ 3]   After field sobriety testing, Schwab was placed under arrest.  At some point during the stop, officers located a loaded rifle between the driver's seat and the front passenger seat in Schwab's vehicle.  Schwab agreed to submit to a blood draw, which was performed at the Law Enforcement Center.  According to the officer's testimony and the blood submission form, no irregularities were present when the blood was drawn.  Michelle Burkett, a forensic analyst from the State Crime Laboratory, processed the blood sample.  The results showed a blood alcohol concentration of 0.12 percent by weight.  Schwab was charged with driving under the influence and with carrying a loaded firearm in a motor vehicle.

[¶ 4]   At the jury trial, the State mentioned in its opening statement that Burkett would be called to testify about the circumstances of the chemical testing.  The results of the blood test performed by Burkett were admitted into evidence without objection.  When Burkett was called to testify the following exchange ensued:

> The Court:  Additional witnesses, Mr. Nyhus?
>
> Mr. Nyhus:  Yes, Your Honor.  The State calls Analyst Michelle Burkett from the State Crime Lab.
>
> The Court:  Would you tell me why she is being called.
>
> Mr. Nyhus:  She is being called to testify about the conditions at the lab and how the analysis is obtained.
>
> The Court:  Well, doesn't the analysis speak for itself?
>
> Mr. Nyhus:  It may.
>
> The Court:  Exhibit 2 [the blood submission form] is in evidence.
>
> Mr. Nyhus:  It is, Your Honor.
>
> The Court:  So what is the purpose for her testimony.
>
> Mr. Nyhus:  Just to inform the jury what goes on at the state lab.
>
> The Court:  Seems to me the same is repetitive unless you can tell me a specific purpose.
>
> Mr. Nyhus:  There appears to be no issue in the blood test, nothing is in the remarks column, which is where they typically tell if something does go wrong they'll indicate it there.  So since there is nothing in the remarks column, I guess I would say we wouldn't need her.
>
> The Court:  The State would then rest?
>
> Mr. Nyhus:  Yes.

Later, defense counsel attempted to call Burkett, who was present in the courtroom.

> The Court:  Do you have any evidence to present.
>
> Ms. Colling:  I would like to call Michelle Burkett.

The Court: We are not going to delay the trial.

Ms. Colling: She is here.

Mr. Nyhus: Your Honor, if I may approach on this as well.

The Court: Very well, counsel. I'm not sure all these approaches are necessary.

Ms. Colling [sic]: Your Honor, she was here under subpoena from the State. And since the State rested, we won't be calling her. She is not obligated to testify.

The Court: The availability of a witness is not dictated merely by subpoena. The availability of witness is actual physical presence. What is the purpose for which the witness is called?

Ms. Colling: Just to talk about the vacutainers.

The Court: Well, the Exhibit is in evidence.

Ms. Colling: The Exhibit is in evidence, but there are still issues the jury should be able to hear.

The Court: There was no objection to the receipt of the evidence.

Ms. Colling: That's because I believed Ms. Burkett would be able to testify for the State, and I would be able to cross-examine her.

The Court: Well, counsel, I am not here to try your case, but we are not going to be redundant. You are not going to use this witness to impeach the test. The results are in evidence.

Ms. Colling: But this witness has direct knowledge of the substance in the vacutainer and can tell the jury what would happen if the substance were not in the vacutainer.

The Court: We are not going to spend the afternoon about theories. Have you evidence to present upon which this witness could then make an interpretation?

Ms. Colling: No. She could just basically give testimony here, Your Honor.

The Court: All she could do is testify to test results that are in evidence.

Ms. Colling: She can testify as to what the powder is and what the purpose is. She can also testify they don't test for that so they don't know whether the appropriate amount of preservative is inside the vacutainer.

The Court: Is there any evidence to suggest to the contrary?

Ms. Colling: Besides the simple fact that my client exhibited hardly any factors of being under the influence.

The Court: No. We are not talking about the test. I don't have any evidence to challenge the validity of the test. Have you evidence to offer?

Ms. Colling: Not without her opinion testimony.

The Court: Her opinion testimony is not going to be contrary to the test result. If you have evidence to present to Ms. Burkett concerning a valid challenge to the test, I will allow it. If you have no such evidence, then the test speaks for itself.

Ms. Colling: Okay.

[¶ 5] Schwab was found guilty of possession of a loaded firearm in a vehicle, of the general crime of driving under the influence and of the per se violation of driving with an alcoholic concentration of 0.08 percent or higher. Schwab was ordered to serve ten days in jail which were suspended for one year, to undergo a chemical dependency evaluation and to pay a fine. Schwab appeals the order, claiming he was denied his right to confront Burkett under both N.D.C.C. § 29–01–06 and the Sixth Amendment to the United States Constitution.

## II

[¶ 6] The district court's decision whether to allow a witness to testify is reviewed under an abuse of discretion standard. *See Schwartz v. Ghaly*, 318 N.W.2d 294, 299 (N.D.1982); *Besette v. Enderlin Sch. Dist. No. 22*, 310 N.W.2d 759, 764 (N.D.1981). "[A] trial court has wide discretion regarding the examination of witnesses, and, under appropriate circumstances, a court may refuse to allow a witness to testify." *Reineke v. Reineke*, 2003 ND 167, ¶ 16, 670 N.W.2d 841. Failure to allow a witness to testify is grounds for a new trial only when the evidentiary determination is "inconsistent with substantial justice." *Davis v. Killu*, 2006 ND 32, ¶ 6, 710 N.W.2d 118. Schwab argues the district court's refusal to allow Burkett to testify is reversible error requiring remand for a new trial. We agree.

[¶ 7] Section 29–01–06, N.D.C.C., acknowledges a criminal defendant's rights "[t]o have the process of the court to compel the attendance of witnesses in the party's behalf" and "[t]o meet the witnesses against the party face to face." Section 39–20–07(9), N.D.C.C., establishes a procedure specific to the examination of forensic scientists who perform chemical testing. While N.D.C.C. § 39–20–07(9) specifically addresses the defendant's right to subpoena the individual conducting the chemical analysis, this Court has previously stated that this statute indicates a broader entitlement "to have the analyst present at trial" and available to testify. *State v. Zink*, 519 N.W.2d 581, 584 (N.D.1994); *see also State v. Howe*, 247 N.W.2d 647, 653 (N.D.1976) (a witness need not be subpoenaed to be considered available for examination). If the chemist "is unlocatable and thus truly unavailable to testify; suppression of the test results is justified." *Zink*, at 584.

[¶ 8] Section 39–20–07, N.D.C.C., "purposely eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report." *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). Blood test results are admissible if the State can show (1) the sample was properly obtained, (2) the test was fairly administered, (3) the testing method and devices were approved by the State Toxicologist and (4) the person conducting the test was authorized or was certified by the State Toxicologist as qualified to perform the test. *Id.* These four requirements may be established by documents in lieu of testimony. *Id.*

[¶ 9] When the prosecution introduces these documents, the test is presumed fair and accurate and, thus, the results are admissible. *State v. Zimmerman*, 516 N.W.2d 638, 642 (N.D.1994). To challenge the admissibility of the test results, the defendant must introduce "enough evidence to rebut this foundation of fair administration." *Id.* If the defendant's rebuttal evidence does not meet this threshold, any challenge to the accuracy of the test results affects the weight of the evidence rather than its admissibility. *Id.*

[¶ 10] Because the prosecutor's burden of establishing a foundation for admission of chemical test results has been eased by N.D.C.C. § 39–20–07, the defendant's ability to challenge the accuracy of admitted test results is important. A principal way to challenge the accuracy of test results is through examination of the director of the state crime laboratory, the State Toxicologist or the technician who performed the testing. *See* N.D.C.C. § 39–20–07(5), (9); *Berger v. State Highway Comm'r*, 394 N.W.2d 678, 686 (N.D.1986). In *Berger*, we stated,

"If [the defendant] believed that the State Toxicologist's approved method is not complete or scientific, he could, and

probably should, have challenged the approved method with expert testimony. He could, and probably should, also have subpoenaed the State Toxicologist and challenged the approved method through cross examination if he believed the approved method to be faulty."

*Id.*

▇ [¶ 11] Here, the chemical test results were admitted without objection. In the colloquy between the court and defense counsel, the court indicates Schwab should have objected to the admission of the test results if he wanted to question Burkett.

The Court: There was no objection to the receipt of the evidence.

Ms. Colling: That's because I believed Ms. Burkett would be able to testify for the State, and I would be able to cross-examine her.

The Court: Well, counsel, I am not here to try your case, but we are not going to be redundant. You are not going to use this witness to impeach the test. The results are in evidence.

A defendant can challenge the foundation of the test results for admissibility purposes and challenge the accuracy of the test results once admitted. Exclusion of Burkett's testimony based upon Schwab's acquiescence to admission of the chemical test results is contrary to N.D.C.C. § 39–20–07, *Berger* and *Zink*. Burkett was under subpoena by the State. Both the State and Schwab called Burkett to testify after the test results were introduced into evidence. Nonetheless, in an effort to avoid redundance and to save time, the court refused to allow Burkett to testify. Rule 611(a), N.D.R.Ev., provides:

"The court shall exercise *reasonable control* over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

(Emphasis added.) When considered in the context of N.D.C.C. § 39–20–07, *Berger* and *Zink*, we conclude the district court's refusal to allow Burkett to testify was unreasonable and, therefore, an abuse of discretion.

[¶ 12] In *City of Bismarck v. Judkins*, 2005 ND 143, ¶ 11, 701 N.W.2d 911, a similar error was found harmless beyond a reasonable doubt because of this Court's "convi[ction] that admission of the blood test results did not contribute to the verdict." *Judkins*, like Schwab, was charged with both the general crime of driving under the influence and with the per se violation of driving with an alcoholic concentration of 0.08 percent or higher. *Id.* at ¶ 4. At trial, the blood test results were admitted, but Judkins was unable to cross-examine either the nurse, who performed the blood draw, or the State Toxicologist, who certified the test results. *Id.* at ¶ 6. There was "ample evidence" showing Judkins was under the influence, including officer testimony that

"Judkins was driving the wrong way on a one-way street at approximately 5:00 a.m.; she smelled of alcohol; she failed numerous field sobriety tests; she had poor balance; she was confused and had gotten lost on her way home; her makeup was smeared and her hair was unkempt; and, she became angry and belligerent when arrested."

*Id.* at ¶ 11. During deliberations, the jury submitted a question to the court regarding the burden of proof as it related to the blood test results. *Id.* at ¶ 9. In its answer, the court informed the jury it was not "bound by the results of the chemical test" and must disregard the results if it

had a "reasonable doubt as to [their] accuracy or reliability." *Id.* The jury convicted on the general crime of driving while intoxicated, but acquitted on the per se offense. *Id.* at ¶ 8. Because we concluded the erroneously admitted test results did not contribute to the jury's verdict, the conviction was affirmed.

[¶ 13] Here, however, the evidence indicating Schwab's intoxication is equivocal. While Schwab admitted to drinking that evening and smelled of alcohol, there was little evidence indicating he was "under the influence of intoxicating liquor" as proscribed by N.D.C.C. § 39–08–01(1)(b). The cause for the stop was an equipment violation, and Schwab passed all sobriety tests except for the horizontal gaze nystagmus test which may have been improperly administered. The test requires a stimulus be held twelve to fifteen inches from the subject's face, but the arresting officer testified at a suppression hearing he held the stimulus ten to twelve inches from Schwab's face. The officer's testimony changed at the jury trial, where the officer stated he held the stimulus twelve to fifteen inches away from Schwab's face. Upon being reminded of his previous testimony, the officer stated his recollection of the distance was "[j]ust an approximation." Unlike Judkins, there is little evidence other than the chemical test results supporting Schwab's conviction. The erroneous exclusion of Burkett's testimony is not harmless, and Schwab is entitled to a new trial.

### III

[¶ 14] We conclude the district court abused its discretion by not allowing Burkett to testify; thus, it is unnecessary to consider Schwab's constitutional arguments. We reverse the criminal judgment of the district court relating to the charge of driving under the influence of intoxicating liquor and remand for a new trial. Additionally, because the excluded testimony has no bearing on the firearm violation, we affirm that judgment.

[¶ 15] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.