2012 ND 156

**STATE of North Dakota, Plaintiff
and Appellee**

v.

**Travis Trainor LUTZ, Defendant
and Appellant.**

**No. 20120091.**

Supreme Court of North Dakota.

July 26, 2012.

Justin J. Schwarz, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Chad R. McCabe, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶1] Travis Trainor Lutz appealed from a criminal judgment entered after he conditionally pled guilty to the charge of driving under the influence. Because we conclude the State was required to produce at trial the nurse who drew Lutz's blood, we reverse and remand for further proceedings.

### I.

[¶2] In September 2011, Lutz was charged with driving under the influence and submitted to a blood draw, which was conducted by a nurse. The State notified Lutz of its intent to introduce an analytical report at trial under N.D.R.Ev. 707. Lutz objected and demanded the State produce the arresting officer, the nurse who drew his blood sample, the lab analysts, including Stephanie Kleinjan, who conducted the chemical test, and Lisa Hentges, who prepared the volatiles solution used during the chemical test, and any evidence custodians or mail clerks involved in the matter. Lutz filed a motion in limine seeking to exclude the analytical report without the requested witnesses' presence at trial.

The State opposed Lutz's motion, arguing it was in compliance with N.D.R.Ev. 707 because it planned to call Kleinjan and the arresting officer at trial. The district court held a hearing on the matter and denied Lutz's motion in limine. Lutz withdrew his plea of not guilty and entered a conditional guilty plea, reserving the right to appeal the district court's decision on his motion in limine. Lutz and the State filed a stipulation for the conditional plea, and the district court entered a criminal judgment.

### II.

[¶3] "We review a district court's decision on a motion in limine for an abuse of discretion." *State v. Buchholz*, 2006 ND 227, ¶7, 723 N.W.2d 534. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner or if it misinterprets or misapplies the law. *State v. Kleppe*, 2011 ND 141, ¶8, 800 N.W.2d 311. "Our standard of review for a claimed violation of a constitutional right, including the right to confront an accuser, is de novo." *State v. Blue*, 2006 ND 134, ¶6, 717 N.W.2d 558.

### III.

[¶4] Lutz argues the district court abused its discretion in denying his motion in limine because N.D.R.Ev. 707 and the Confrontation Clause require the State to produce at trial the nurse who drew his blood sample, Kleinjan, Hentges, any evidence custodians or mail clerks involved in the matter, and the arresting officer. Lutz asserts the analytical report should not be admitted into evidence without the presence of these witnesses at trial. He also asserts the analytical report should not be received into evidence because the State cannot establish the chain of custody.

## A.

■ [¶ 5] Rule 707, N.D.R.Ev., provides in part:

*Analytical Report Admission; Confrontation*

*(a) Notification to Defendant.* If the prosecution intends to introduce an analytical report issued under N.D.C.C. chs. 19–03.1, 19–03.2, 19–03.4, 20.1–13.1, 20.1–15, 39–06.2, or 39–20 in a criminal trial, it must notify the defendant or the defendant's attorney in writing of its intent to introduce the report and must also serve a copy of the report on the defendant or the defendant's attorney at least 30 days before the trial.

*(b) Objection.* At least 14 days before the trial, the defendant may object in writing to the introduction of the report and identify the name or job title of the witness to be produced to testify about the report at trial. If objection is made, the prosecutor must produce the person requested. If the witness is not available to testify, the court must grant a continuance.

*(c) Waiver.* If the defendant does not timely object to the introduction of the report, the defendant's right to confront the person who prepared the report is waived.

We recently considered whether N.D.R.Ev. 707 and the Confrontation Clause require the State to produce at trial the nurse who drew the defendant's blood sample in *State ex rel. Roseland v. Herauf,* 2012 ND 151, 819 N.W.2d 546. The majority in *Herauf* interpreted N.D.R.Ev. 707 together with N.D.C.C. § 39–20–07 and concluded that N.D.R.Ev. 707 required the State to produce at trial the person who drew the defendant's blood sample to satisfy the constitutional requirements of N.D.C.C. § 39–20–07. *Herauf,* at ¶ 18. The majority reasoned:

■ Rule 707, N.D.R.Ev., was adopted in response to *Melendez–Diaz v. Massachusetts* [557 U.S. 305], 129 S.Ct. 2527 [174 L.Ed.2d 314] (2009). *See* N.D.R.Ev. 707, Explanatory Note. In *Melendez–Diaz,* the United States Supreme Court held that certificates of analysis, which showed the results of forensic analysis performed on seized substances, were testimonial statements for confrontation purposes. *Melendez–Diaz,* 129 S.Ct. at 2531–32. The Court outlined what qualifies as testimonial:

*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements … contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 2531 (quoting *Crawford v. Washington,* 541 U.S. 36, 51–52 [124 S.Ct. 1354, 158 L.Ed.2d 177] (2004)). The Court concluded the certificates constituted affidavits and therefore were testimonial because they were "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *Melendez–Diaz,* 129 S.Ct. at 2532 (quoting *Crawford,* 541 U.S. at 51 [124 S.Ct. 1354]). Additionally, the certificates were made under circumstances which would lead an objective, reasonable witness to believe the certificates would later be used at trial, and "under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie

evidence of the composition, quality, and the net weight' of the analyzed substance[.]'" *Melendez–Diaz*, 129 S.Ct. at 2532 (quoting Mass. Gen. Laws, ch. 111, § 13 (2004)) (emphasis in original). *See Williams v. Illinois* [—— U.S. ——, 132 S.Ct. 2221, 2232–33, 2265–66, 183 L.Ed.2d 89], 2012 WL 2202981, at \*\*10, 41 (U.S. June 18, 2012) (plurality opinion) (Kagan, J., dissenting) (reaffirming the testimonial nature of the certificates in *Melendez–Diaz* because they were created solely to provide evidence against the defendant). Absent a showing that the analysts who prepared the certificates of analysis were unavailable for trial and the defendant had a prior opportunity to cross-examine them, the defendant was entitled to confront the analysts at trial. *Melendez–Diaz*, 129 S.Ct. at 2532. The Court clarified its holding:

> Contrary to the dissent's suggestion, ... we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," ... this does not mean that everyone who laid hands on the evidence must be called.

*Id.* at 2532, n. 1. The Court also held that a defendant's ability to subpoena an analyst does not abrogate the prosecutor's obligation under the Confrontation Clause to produce the analyst. *Id.* at 2540. The Court acknowledged the validity of notice-and-demand statutes, which require the prosecution to notify the defendant of its intent to introduce an analytical report, after which the defendant may object to admission of the report without the analyst's appearance at trial. *Id.* at 2541.

■ The Supreme Court recently revisited *Melendez–Diaz* in *Bullcoming v. New Mexico* [—— U.S. ——], 131 S.Ct. 2705 [180 L.Ed.2d 610] (2011). In *Bullcoming,* the defendant was arrested for driving under the influence. *Bullcoming,* 131 S.Ct. at 2709. At trial, the State presented a forensic lab report certifying the defendant's blood-alcohol concentration was over the legal limit. *Id.* Rather than calling the analyst who prepared and signed the certification, the State called a different analyst who was familiar with the lab's testing procedures but did not participate in or observe the test performed on the defendant's blood sample. *Id.* The Court held this procedure violated the defendant's confrontation right because the certified report was testimonial and the State did not produce the analyst who certified the report. *Id.* at 2710. The Court rejected the argument that the report was nontestimonial because it determined the report was created for an evidentiary purpose as part of a police investigation. *Id.* at 2717. *See Williams* [132 S.Ct. at 2233, 2265–66], 2012 WL 2202981, at \*\*11, 41 (plurality opinion) (Kagan, J., dissenting) (reiterating that the report in *Bullcoming* was testimonial because it was a signed document created to prove facts in a criminal proceeding). The Court also concluded the fact that the report was unsworn was not dispositive in determining if the report was testimonial, and the formalities accompanying the report, including the preparer's signature, were more than adequate to make the report testimonial. *Bullcoming,* 131 S.Ct. at 2717.

■ Rule 707, N.D.R.Ev., must be interpreted in light of N.D.C.C. § 39–20–07, which governs the admission of

analytical reports into evidence, because the rule and the statute are interconnected regarding analytical reports, as demonstrated by the language of the rule. *See* N.D.R.Ev. 707(a) (referencing N.D.C.C. ch. 39–20 as one of the chapters under which an analytical report may be introduced into evidence). Significantly, the legislature intertwined analytical reports and blood draws within N.D.C.C. § 39–20–07, requiring us to include blood draws, as well as analytical reports, in our interpretation of N.D.R.Ev. 707.

■ Section 39–20–07, N.D.C.C., provides in part:

*Interpretation of chemical tests.* Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any individual while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol concentration or presence of other drugs, or a combination thereof, in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible. For the purpose of this section:

. . .

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's des-

ignee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

. . .

8. A certified copy of the analytical report of a blood or urine analysis referred to in subsection 5 and which is issued by the director of the state crime laboratory or the director's designee must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5.

. . .

10. A signed statement from the individual medically qualified to draw the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of this evidence may be required.

N.D.C.C. § 39–20–07(5), (8), and (10). Under this statute, an analytical report is admissible if the State can establish: (1) the blood sample was properly obtained; (2) the blood test was fairly administered; (3) the method and devices used in testing the sample were approved by the State Toxicologist; and (4) the blood test was performed by an authorized individual or by a person certified by the State Toxicologist as qualified to perform the test. N.D.C.C. § 39–20–07(5); *Schlosser v. N.D. Dep't of Transp.*, 2009 ND 173, ¶ 9, 775 N.W.2d 695.

■ Prior to *Melendez–Diaz* and N.D.R.Ev. 707, an analytical report could be received into evidence without testimony under N.D.C.C. § 39–20–07. *See State v. Schwab*, 2008 ND 94, ¶ 8, 748 N.W.2d 696; *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). The Court noted in *Jordheim:*

> The report of a blood-test must be admitted under NDCC 39–20–07(8), even without the testimony of the chemist performing the test, if the proper foundation is developed.... For a blood-alcohol test, the technician who drew the blood need not testify, if a written statement of the technician is introduced showing that the sample was drawn according to the methods approved by the State Toxicologist. NDCC 39–20–07(5) and (10).

*Jordheim*, 508 N.W.2d at 881. *Melendez–Diaz* established that a defendant was entitled to confront the individual who prepared the analytical reports because the reports were testimonial statements. *Melendez–Diaz*, 129 S.Ct. at 2532. That holding essentially negates the shortcut provisions of N.D.C.C. § 39–20–07(5) and (8) as to the admission of an analytical report if the defendant objects to admission of the report without the analyst's testimony, as exemplified by the adoption of N.D.R.Ev. 707.

■ But, under the statute, a prerequisite to admission of an analytical report is a signed statement from the individual medically qualified to draw the blood sample that the blood sample was properly drawn. N.D.C.C. § 39–20–07(5) and (10); *Schlosser*, 2009 ND 173, ¶ 9, 775 N.W.2d 695. Section 39–20–07(10), N.D.C.C., provides: "[a] signed statement from the individual medically qualified to draw the blood sample for testing as set forth in [N.D.C.C. § 39–20–07] subsection 5 is prima facie evidence that the blood sample was properly drawn[.]" Rather than a foundational requirement, *see State v. Gietzen*, 2010 ND 82, ¶¶ 16–19, 786 N.W.2d 1, *State v. Friedt*, 2007 ND 108, ¶¶ 7, 10–11, 13, 735 N.W.2d 848, we conclude the "signed statement" contemplated under N.D.C.C. § 39–20–07(10) constitutes a testimonial statement. The signed statement is akin to an affidavit, which is testimonial, *see Crawford*, 541 U.S. at 51–52 [124 S.Ct. 1354], because it is a "solemn declaration or affirmation made for the purpose of establishing or proving" that the blood sample was properly obtained. *Melendez–Diaz*, 129 S.Ct. at 2532 (quoting *Crawford*, 541 U.S. at 51 [124 S.Ct. 1354]). The fact that the signed statement is unsworn is not dispositive in determining if the statement is testimonial. *Bullcoming*, 131 S.Ct. at 2717. Also, as in *Melendez–Diaz*, the sole purpose of the signed statement in subsection 10 is to establish prima facie evidence that the blood sample was properly drawn. N.D.C.C. § 39–20–07(10); *see Melendez–Diaz*, 129 S.Ct. at 2532.

■ The signed statement contemplated under N.D.C.C. § 39–20–07(10) is a testimonial statement. *See Crawford*, 541 U.S. at 51–52 [124 S.Ct. 1354]. Therefore, the individual who signs such a statement is a witness for confrontation purposes and the defendant is entitled to be confronted with that individual at trial unless the individual is unavailable and the defendant had a prior opportunity for cross-examination. *Melendez–Diaz*, 129 S.Ct. at 2532. We presume statutes and rules are constitutional, and we will construe them to be constitutional if possible. *Paluck[ v. Bd. of Cnty. Comm'rs, Stark Cnty.]*, 307 N.W.2d [852,] at 857 [ (N.D.1981) ];

N.D.C.C. § 1–02–38(1). Statutes and rules should be harmonized to give meaning to related provisions. *Great Western Bank*[ *v. Willmar Poultry Co.*], 2010 ND 50, ¶ 7, 780 N.W.2d 437; N.D.C.C. § 1–02–07. With these principles in mind, we conclude N.D.R.Ev. 707, when construed with N.D.C.C. § 39–20–07 and the constitutional rights it provides, requires the State to produce the individual who drew the defendant's blood sample if the defendant objects under N.D.R.Ev. 707(b) and identifies the individual who drew the defendant's blood as a witness to be produced at trial. We note this area of jurisprudence has continued to develop since N.D.R.Ev. 707 was adopted in 2011. *See Bullcoming*, 131 S.Ct. 2705; *Williams* [132 S.Ct. 2221], 2012 WL 2202981. To the extent our previous cases are inconsistent with our holding today, they are overruled. *Herauf*, 2012 ND 151, ¶¶ 9–15, 819 N.W.2d 546. The majority opinion in *Herauf* is dispositive on this issue: under N.D.R.Ev. 707, which we interpret with N.D.C.C. § 39–20–07, the State is required to produce at trial the nurse who drew Lutz's blood sample.

### B.

[¶ 6] Lutz also argues N.D.R.Ev. 707 requires the State to produce at trial Hentges, who prepared the volatiles solution. We note there is no statute similar to N.D.C.C. § 39–20–07(10) that addresses the analyst who prepared the volatiles solution used in the chemical test, making our analysis under that statute as to the individual who drew the blood sample inapplicable on this issue.

[¶ 7] Rule 707, N.D.R.Ev., governs analytical reports, which are subject to confrontation because of their testimonial nature. *See Melendez–Diaz*, 129 S.Ct. at 2531–32; *Bullcoming*, 131 S.Ct. at 2710,

2717. In *Melendez–Diaz*, the Court clarified, "we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez–Diaz*, 129 S.Ct. at 2532, n. 1. The Court recognized the prosecution must establish the chain of custody, but "this does not mean that everyone who laid hands on the evidence must be called[,]" and gaps in the chain of custody usually go to the weight of the evidence, not its admissibility. *Id.* The Court also observed that "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Id.*

[¶ 8] Hentges's expected testimony falls squarely within footnote one of *Melendez–Diaz*. At oral argument, Lutz conceded that Hentges would not comment about the analytical report and her testimony would be limited to her preparation of the volatiles solution, which relates to the chain of custody or the accuracy of the testing procedure. *See id.* Additionally, indicative factors that a statement is testimonial include whether the statement is one that declarants would reasonably believe would be used prosecutorially and whether the statement was made under circumstances that would lead an objective witness to reasonably believe the statement would be used at a later trial. *See Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354; *Melendez–Diaz*, 129 S.Ct. at 2531; *Bullcoming*, 131 S.Ct. at 2714, n. 6. Here, the exhibit attached to Lutz's motion in limine reflects that Hentges prepared the volatiles solution on June 27, 2011, three months before Lutz was charged with driving under the influence, and the solution expired on December 27, 2011. There is nothing in the record to suggest that the solution or the statement were prepared

under circumstances that would lead Hentges or an objective witness to reasonably believe the solution or statement would be used for prosecutorial purposes at a later trial or that the solution was even prepared for the purpose of testing any person's blood for intoxication while driving. Furthermore, the State is not seeking to introduce this document into evidence; rather, Lutz offered it to support his motion in limine.

[¶ 9] Other state courts have considered arguments similar to Lutz's in the context of a breath test. In *State v. Britt*, the Nebraska Supreme Court concluded a sworn certificate that certified the analysis of the solution used to test and calibrate the breath testing machine was not a testimonial statement for confrontation purposes. *Britt*, 283 Neb. 600, 813 N.W.2d 434, 435, 440 (2012). The court determined the solution, which was prepared six months before the complaint was filed, was not principal evidence and its chain of custody was not an issue. *Id.* at 438. The court noted:

> The certificate was not created in preparation for a trial and did not pertain to any particular pending matter. Instead, it related to the maintenance process and accuracy of the testing device to ensure that the solution used to calibrate and test the breath testing device was of the proper concentration, and the certificate would have been prepared regardless of whether or not it would later be used in a criminal proceeding.

*Id.* at 439. The court concluded the preparation of the certificate was too attenuated from the prosecution of the defendant to be considered testimonial. *Id.* The court pointed out that its conclusion did not prevent the defendant from challenging the accuracy of the certificate. *Id.*

[¶ 10] In *Commonwealth v. Zeininger*, the Supreme Judicial Court of Massachusetts considered whether an annual certification attesting to the proper functioning of a breathalyzer machine without the live testimony of the technician who performed the certification test violated the defendant's confrontation rights. *Zeininger*, 459 Mass. 775, 947 N.E.2d 1060, 1062 (2011). The court determined the certification was admissible as a business record and was not testimonial for confrontation purposes. *Id.* The court noted that the certification went to the admissibility or credibility of the evidence and was offered for foundational purposes. *Id.* at 1069. The court believed that such certifications "bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)." *Id.* (quoting *State v. Bergin*, 231 Or.App. 36, 217 P.3d 1087, 1089 (2009)). The court also noted the primary purpose of the certification was to guarantee, internally, the accuracy and standardization of the machines across the Commonwealth. *Id.* at 1070.

[¶ 11] We recognize that here, unlike in *Britt* and *Zeininger*, the State is not seeking to introduce a certificate or another document by Hentges certifying the accuracy of the solution. However, we find the reasoning in *Britt* and *Zeininger* persuasive and applicable under the facts presented here. We conclude N.D.R.Ev. 707 does not require the State to produce Hentges at trial. Lutz is free to subpoena Hentges to challenge the accuracy of the volatiles solution.

[¶ 12] Lutz argues that N.D.R.Ev. 707 requires the State to produce at trial any mail carriers or evidence custodians involved in the matter. Mail carriers and evidence custodians clearly fall within footnote one of *Melendez–Diaz* because their role relates to the chain of custody, not to the analytical report. *Melendez–Diaz*, 129

S.Ct. at 2532, n. 1. As the Court noted in that case, the prosecution is not required to produce all individuals who laid hands on the evidence when establishing the chain of custody. *Id.* Additionally, the role of mail carriers and evidence custodians is even further removed from the analytical report contemplated under N.D.R.Ev. 707 than Hentges's role, and we determined the State was not required to produce Hentges at trial. We similarly conclude N.D.R.Ev. 707 does not require the State to produce at trial the mail carriers and evidence custodians involved in this matter. We again note that Lutz has the right to subpoena these witnesses for trial.

[¶ 13] Lutz also asserts the State is required to produce at trial Kleinjan, who conducted the chemical test, and the arresting officer under N.D.R.Ev. 707. Because the State informed the district court that it planned to produce these individuals at trial, we need not consider this argument.

### IV.

[¶ 14] Rule 707, N.D.R.Ev., when read with N.D.C.C. § 39–20–07, requires the State to produce at trial the nurse who drew Lutz's blood sample. The rule does not require the State to produce the individual who prepared the volatiles solution, the mail carriers, or the evidence custodians. We reverse and remand for further proceedings consistent with this opinion.

[¶ 15] CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 16] I concur in Part III B. I respectfully dissent from the remainder of the decision for the reasons I stated in *State,* *ex rel. Roseland v. Herauf,* 2012 ND 151, 819 N.W.2d 546.

[¶ 17] DALE V. SANDSTROM, J., concurs.