2010 ND 82

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Shane Daniel GIETZEN, Defendant and Appellant.**

No. 20090307.

Supreme Court of North Dakota.

May 11, 2010.

Bryan David Denham, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Michael Ray Hoffman, Bismarck, ND, for defendant and appellant.

Ken R. Sorenson (on brief), Office of Attorney General, Bismarck, ND, for amicus curiae.

CROTHERS, Justice.

[¶ 1]   Shane Gietzen appeals the district court's order entering judgment on the jury's verdict finding Gietzen guilty of driving under the influence of alcohol with a blood-alcohol concentration of 0.08 percent or greater.  We affirm.

I

[¶ 2]   On May 23, 2009, Gietzen was arrested in Bismarck, North Dakota for driving under the influence of alcohol with a blood-alcohol concentration of 0.08 percent or greater.  Gietzen was stopped by North Dakota State Highway Trooper Jeremiah Bohn, who testified Gietzen smelled of alcohol, had watery and bloodshot eyes and failed the horizontal gaze nystagmus field test.  Officer Bohn transported Gietzen to a medical center where blood was drawn from Gietzen.  Officer Bohn used a blood testing kit supplied by the North Dakota State Toxicologist, initially inspecting the exterior of the kit to ensure that it was sealed and that the expiration date had not passed.  Officer Bohn next opened the kit and inspected its contents, ensuring the kit was intact.  The kit was then passed to a registered nurse, who drew Gietzen's blood.

[¶ 3] Gietzen's initial blood draw failed to produce a measurable amount of blood due to a defective seal on the blood-draw apparatus. A second kit was obtained and inspected by Officer Bohn, and the kit was passed to the same registered nurse. After the nurse completed the second blood draw, she recorded her actions on Form 104 by checking boxes indicating she used an intact kit, observed powder in the vacutainer tube, used the disinfectant provided in the kit, used the needle provided in the kit, drew blood into the provided tube and inverted the tube several times. Officer Bohn also completed his portion of Form 104 by checking boxes indicating he used an intact kit, sealed the blood tube, placed the blood tube in a protective container, placed the protective container in a plastic bag, placed the plastic bag in a mailing box and sealed the box with tamper-evident tape. The sealed box containing Gietzen's blood sample was mailed to the State Crime Lab for analysis.

[¶ 4] At the State Crime Lab, Gietzen's blood sample was analyzed by a forensic scientist. The scientist determined the blood-alcohol concentration of the sample was 0.13 percent, and she reported her findings on Form 107. The Form 104 and Form 107 associated with Gietzen's arrest were analyzed by a deputy state toxicologist, who signed a document certifying the chemical analysis of Gietzen's blood sample was conducted according to the State's approved method for chemical tests.

[¶ 5] Gietzen was tried by a jury on October 14, 2009. The State called Officer Bohn and the forensic scientist as witnesses, and both were cross-examined by Gietzen. During Officer Bohn's testimony, the State attempted to introduce Form 104 and Form 107. Gietzen objected, arguing the forms violated his right to confront adverse witnesses because they contained testimony from the deputy state toxicologist and the registered nurse, neither of whom were present to testify. The district court sustained Gietzen's objection, but allowed the forms into evidence after a foundation was laid by the forensic scientist's testimony. The jury returned a verdict finding Gietzen guilty of driving under the influence of alcohol with a blood-alcohol concentration greater than 0.08 percent, and Gietzen timely filed this appeal.

II

[¶ 6] Gietzen argues this case should be reversed and an acquittal should be entered because the State failed to show scrupulous compliance with the approved method of the State Toxicologist when Officer Bohn handled the contents of the testing kit and when the nurse did not testify the drawn blood in the tube was inverted several times. We disagree.

[¶ 7] The purpose of N.D.C.C. § 39-20-07 regarding the performance and the interpretation of chemical tests in prosecutions for alcohol related driving offenses is to ease the requirements for the admissibility of chemical test results while assuring fair administration of the test upon which the results are based. *See City of Bismarck v. Bosch*, 2005 ND 12, ¶ 6, 691 N.W.2d 260, *reh'g denied, cert. denied*, 545 U.S. 1141, 125 S.Ct. 2980, 162 L.Ed.2d 890 (2005). The requirements of N.D.C.C. § 39-20-07 must be complied with before Form 104 can be introduced into evidence. *State v. Schwalk*, 430 N.W.2d 317, 322 (N.D.1988). The state toxicologist need not be called when it can be shown that the approved method was followed. *Bosch*, at ¶ 6. The approved method must be scrupulously followed, but "scrupulous compliance does not mean hypertechnical compliance." *Id.* "An adequate foundation may be established by testimony that identifies the evidence and establishes the competency, materiality,

and relevancy of the evidence." *State v. Friedt*, 2007 ND 108, ¶ 12, 735 N.W.2d 848 (quoting *State v. Noorlun*, 2005 ND 189, ¶ 15, 705 N.W.2d 819).

## A

[¶ 8] Gietzen argues his blood test results were not properly admitted because Officer Bohn handled the testing kit's contents before giving the complete kit to the blood-drawing nurse. We reject this claim because Form 104 requires that both the nurse and the officer check a box verifying they "[u]sed an Intact Kit." Both the nurse and the officer also must make written certification that the information they have provided on Form 104 is true and correct. Officer Bohn testified he ensured the kit was intact by inspecting the exterior and interior of the testing kit. We therefore conclude that, without evidence that the officer improperly handled contents of the kit, the officer's inspection of the kit's exterior and interior do not constitute deviation from scrupulous compliance with the approved method.

## B

[¶ 9] Gietzen argues his blood sample was not properly admitted because Officer Bohn's testimony that the nurse checked the box indicating the tube was inverted several times was conclusory and did not provide an adequate foundation. He also argues Form 104 itself provides an insufficient foundation because the confrontation clause of the Sixth Amendment to the United States Constitution requires the opportunity to confront adverse witnesses. Gietzen's confrontation clause argument is addressed in Part III of this decision.

[¶ 10] The State submitted Form 104 which included a certified statement from the blood-drawing nurse that she "Drew Blood Into Tube and Inverted Several Times." Section 39–20–07(10), N.D.C.C., states, "A signed statement from the individual medically qualified to draw the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of this evidence may be required." Subsection 5 of N.D.C.C. § 39–20–07 provides:

"The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test."

Read together, these two subsections permit admission of blood test results without further foundation if certain conditions are met. N.D.C.C. §§ 39–20–07(10), 39–20–07(5). Above we rejected Gietzen's claim that the officer's handling of the kit and contents meant the test was not fairly administered due to a failure to scrupulously follow the approved method. No other challenges were made to the foundational facts. We therefore conclude the district court did not err by admitting the test results in reliance on information provided in Form 104.

[¶ 11]   Gietzen argues we must reach a contrary result because of our decision in *Schwalk*, 430 N.W.2d 317.  There, we concluded that the State failed to establish a blood draw was made in compliance with the state toxicologist's approved method but that the State could have cured the foundational defect through testimony providing the missing information.  *Id.* at 324.  However, the problem in *Schwalk* was that the medical personnel drawing blood had no place on Form 104 to certify that the approved method had been followed.  430 N.W.2d at 323 ("Absent such a written certification that all of the State Toxicologist's directives for sample collection have been followed, Form 104 does not on its face establish fair administration of the test, and the State must therefore do so by other evidence.").  Here, the nurse certified on Form 104 that she performed the specified acts.  Therefore, the proof lacking in *Schwalk* is present here.

[¶ 12]   Gietzen also claims *Schlosser v. N.D. Dep't of Transp.* requires a different result in this case.  2009 ND 173, 775 N.W.2d 695.  However, in *Schlosser* the State offered the arresting officer's conclusory testimony about fair administration of the blood test according to the approved method and did not introduce the completed Form 104.  *Id.* at ¶ 13.  Here, by contrast, a completed Form 104 and Officer Bohn's testimony were admitted.  We therefore conclude our decision in *Schlosser* does not support Gietzen's argument.

### III

[¶ 13]   Gietzen argues this case should be reversed and an acquittal entered because his constitutional right to confront adverse witnesses was violated when the State failed to call the nurse and the deputy state toxicologist as witnesses.  Gietzen contends the nurse's statements on Form 104 and the deputy state toxicologist's certification of Form 104 and Form 107 are testimony against him, requiring the State to produce the declarants for cross-examination or forego entering the statements as evidence.  "This court reviews an alleged violation of a constitutional right de novo." *State v. Harmon*, 1997 ND 233, ¶ 16, 575 N.W.2d 635.

[¶ 14]   The facts in this case are similar to those in *Friedt*, 2007 ND 108, ¶¶ 2–6, 735 N.W.2d 848.  Friedt was charged with driving under the influence of alcohol, and the arresting officer, registered nurse, forensic scientist and state toxicologist performed their respective roles in establishing that Friedt's blood-alcohol content was greater than 0.08 percent.  *Id.*  Friedt appealed her conviction, arguing the State's failure to call the blood-drawing nurse violated her right of confrontation and precluded the admission of Form 104, Form 107 and the state toxicologist's certification.  *Id.* at ¶ 7.  Friedt's appeal was analyzed as an evidentiary challenge rather than a constitutional challenge, and her conviction was upheld because testimony from her arresting officer "showed that Friedt's blood was properly obtained." *Id.* at ¶ 13.  An important difference between *Friedt* and this case is the testimony of the arresting officers.

[¶ 15]   Friedt's arresting officer testified he watched Friedt's nurse perform the steps outlined on Form 104.  *Friedt*, 2007 ND 108, at ¶¶ 12–13, 735 N.W.2d 848.  Officer Bohn testified only that he observed Gietzen's nurse check off her portion of Form 104.  The nurse in *Friedt* was not required to testify because the testimony of Friedt's arresting officer established that Friedt's blood sample was properly obtained, laying the foundation for Friedt's chemical analysis.  *Id.* at ¶ 13.  Here, Officer Bohn's testimony failed to establish Gietzen's blood sample was properly obtained, so the foundation for Gietzen's

chemical analysis must come from another source. This other source was Form 104, as allowed by N.D.C.C. § 39–20–07(5), which states,

"The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee."

Section 39–20–07, N.D.C.C., "eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report and balances procedural efficiency and scientific reliability by allowing scrupulously completed documents as evidence in lieu of lengthy testimony." *State v. Asbridge*, 555 N.W.2d 571, 573 (N.D.1996). Gietzen's Form 104 established his blood draw's "[f]air administration, chain of custody, and compliance with the State Toxicologist's methods." *Id.* (quoting *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D. 1993) ).

[¶ 16] Gietzen argues his right to confrontation was violated by the State's use of Form 104 and specifically by the nurse's statements contained on Form 104, because the nurse's statements are testimony against him that he was not allowed to challenge through cross-examination. This argument is interesting but, ultimately, unavailing. In *Melendez–Diaz v. Massachusetts*, the United States Supreme Court determined a criminal defendant's right to confrontation was violated when the only evidence that the substance he carried was cocaine came from a certified report of a forensic scientist who did not testify. —— U.S. ——, 129 S.Ct. 2527,

2530–31 and 2542, 174 L.Ed.2d 314 (2009). The Supreme Court reversed Melendez–Diaz' conviction for distributing and trafficking cocaine, determining the scientist's certified report was testimony against Melendez–Diaz because it was "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* at 2532 (quoting *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).

[¶ 17] Although *Melendez–Diaz* clarifies a criminal defendant's right to confront analysts who prepare reports used at trial to prove elements of a charged crime, that is not the issue here. 129 S.Ct. at 2532. Unlike *Melendez–Diaz*, the scientist analyzing Gietzen's blood sample testified at trial. Gietzen attempts to extend his confrontational rights to include confrontation of his blood-drawing nurse and the deputy state toxicologist, whose statements serve no other purpose than to establish that Gietzen's blood sample was properly obtained. The Supreme Court foresaw this argument and discussed its relevance and applicability, stating,

"Contrary to the dissent's suggestion, ... we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that '[i]t is the obligation of the prosecution to establish the chain of custody,' ... this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation ... from *United States v. Lott*, 854 F.2d 244, 250 (C.A.7 1988), 'gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.' It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is

introduced must (if the defendant objects) be introduced live. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Melendez–Diaz*, at 2532 n. 1 (citations omitted). Here, the statements of Gietzen's nurse fall squarely within footnote one because they serve the evidentiary function of establishing the propriety of Gietzen's blood draw, not the conclusory function of establishing Gietzen's blood-alcohol concentration was greater than 0.08 percent.

[¶ 18] Although Form 104 shows Gietzen's blood sample was properly obtained, the foundational shortcut allowing admission of Gietzen's blood test cannot be used unless the State shows the blood sample was properly analyzed. N.D.C.C. § 39–20–07(5). Here, that showing was made by the deputy state toxicologist, who certified,

"I have carefully compared the Analytical Report (Form 107) and Submission for Blood (Form 104) ... hereto attached with the respective original as the same appears of record on file in the Office of Attorney General, Crime Laboratory Division, in the County of Burleigh, North Dakota, and find the same to be a true and correct copy thereof and of the whole thereof. Further, I certify that the analysis of the blood sample has been performed by an analyst, method, and device approved by the State Toxicologist and by an individual certified by the State Toxicologist to conduct blood alcohol analyses pursuant to ... the North Dakota Century Code."

The statement by the deputy state toxicologist also falls within *Melendez–Diaz'* footnote one because it lays foundation for the admission of Gietzen's chemical analysis but it does not directly prove an element of the charged crime. Therefore, Gietzen's confrontational challenges to the statements of the nurse and the deputy state toxicologist fail.

[¶ 19] Other jurisdictions have interpreted *Melendez–Diaz* similarly, distinguishing testimony entered to prove an element of a crime from statements entered for other purposes. *See, e.g., State v. Bergin*, 231 Or.App. 36, 217 P.3d 1087, 1089 (2009) (admitting intoxilyzer certificate of accuracy without technician's testimony because "[i]ntoxilyzer certificates bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)"); *Commonwealth v. Sylvia*, 456 Mass. 182, 921 N.E.2d 968, 975 n. 15 (2010) (admitting without live testimony analyst's report indicating defendant's victim had marijuana in his system at time of death because evidence showed defendant's motive for murder was involvement in drug deal and because motive was not an element of the charged crime). The district court did not err in admitting Form 104 or the deputy state toxicologist's certification because those evidentiary documents laid a foundation for the admission of Gietzen's chemical analysis and because they did not attempt to directly prove an element of the charged offense.

IV

[¶ 20] We affirm the district court's order for judgment entering the jury's verdict finding Gietzen guilty of driving under the influence of alcohol with a blood-alcohol concentration of 0.08 percent or greater.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.