2012 ND 151

STATE of North Dakota, ex rel. Aaron W. ROSELAND in his capacity as Adams County State's Attorney, Petitioner

v.

The Honorable William A. HERAUF, in his capacity as Judge of the District Court, Southwest Judicial District, and Gwen Bohmbach, Respondents.

No. 20120170.

Supreme Court of North Dakota.

July 26, 2012.

Aaron W. Roseland, State's Attorney, Hettinger, ND, for petitioner.

Ashley E. Holmes, Dickinson, ND, for respondent Gwen Bohmbach.

Nicholas D. Thornton, Fargo Public Defender Office, Fargo, ND, for amicus curiae North Dakota Association of Criminal Defense Lawyers; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] The State of North Dakota, through Adams County State's Attorney Aaron Roseland, petitioned for a supervisory writ directing the district court to withdraw its pretrial order holding N.D.R.Ev. 707 required the State to produce at trial the person who drew Gwen Bohmbach's blood on the charge of driving under the influence. We conclude this is an appropriate case in which to exercise our supervisory jurisdiction. Because we hold N.D.R.Ev. 707, when construed with N.D.C.C. § 39–20–07, requires the State to produce at trial the individual who drew Bohmbach's blood, we deny the State's petition.

I.

[¶ 2] Bohmbach was arrested for driving under the influence and submitted to a blood draw, which was conducted by a nurse. The State notified Bohmbach that it intended to introduce the analytical report at trial. Bohmbach sent the State a subpoena to serve on the nurse who drew her blood. The State moved to quash the subpoena, arguing N.D.R.Ev. 707 did not require it to produce the nurse who drew Bohmbach's blood because the nurse had no knowledge of the analytical report. The district court, after a hearing on the motion, concluded the State was required to produce the nurse at trial.

II.

[¶ 3] This Court's authority to issue supervisory writs under N.D. Const. art. VI, § 2 and N.D.C.C. § 27–02–04 is a discretionary authority exercised on a case-by-case basis. *State v. Holte*, 2001 ND 133, ¶ 5, 631 N.W.2d 595. We exercise this discretionary authority rarely and cautiously and only to rectify errors and prevent injustice in extraordinary cases in which no adequate alternative remedy exists. *Id.* We generally will decline to exercise supervisory jurisdiction if the proper remedy is an appeal. *Id.*

[¶ 4] We conclude this is an appropriate case to exercise our supervisory jurisdiction because the State lacks another adequate remedy. The State's ability to appeal is limited. *See* N.D.C.C. § 29–28–07. If Bohmbach were found not guilty by a jury, the State could not appeal. *See State v. Bernsdorf*, 2010 ND 123, ¶ 5, 784 N.W.2d 126; *State v. Deutscher*, 2009 ND 98, ¶ 7, 766 N.W.2d 442; *City of Bismarck v. Uhden*, 513 N.W.2d 373, 379 (N.D.1994). If Bohmbach were found guilty by a jury, she would not likely raise the issue on appeal and the possibility that the State could raise it is remote. *See Holte*, 2001 ND 133, ¶ 6, 631 N.W.2d 595; *State v. Sabinash*, 1998 ND 32, ¶ 19, 574 N.W.2d 827.

[¶ 5] Bohmbach and the North Dakota Association of Criminal Defense Lawyers,

as amicus curiae, argue the State has two adequate alternative remedies. The first suggested remedy, which would have the State proceed to trial under N.D.C.C. § 39–08–01(1)(b) based solely on the officer's testimony, is inadequate because it limits the State to proceed under one theory of driving under the influence when generally it can present the jury with two separate theories. Under N.D.C.C. § 39–08–01(1)(a), the per se violation, a person can be convicted of driving under the influence based on the results of a chemical test. Section 39–08–01(1)(b), N.D.C.C., provides a person can be convicted of driving under the influence of intoxicating liquor regardless of the driver's blood alcohol level if the State proves the person drove a motor vehicle on a public way lacking "the clearness of intellect and control of himself that he would otherwise have." *State v. Knowels*, 2003 ND 180, ¶ 8, 671 N.W.2d 816 (quoting *State v. Whitney*, 377 N.W.2d 132, 133 (N.D.1985)). The second suggested remedy, to produce the nurse at trial or depose her and offer her deposition in lieu of testimony, requires the State to comply with the district court order and, seemingly, reserve any challenge to the order for appeal. However, as discussed above, the State is unlikely to be able to raise the issue on appeal, making this remedy inadequate.

### III.

[¶ 6] The State argues the district court misinterpreted N.D.R.Ev. 707 to conclude the State was required to produce the nurse at trial. The State asserts the rule only requires it to produce those persons who have knowledge about the analytical report, and the nurse who drew the blood sample has no knowledge about the report.

[¶ 7] We interpret rules of court, including the rules of evidence, in accordance with principles of statutory construction. *Walker v. Schneider*, 477 N.W.2d 167, 172 (N.D.1991); *State v. Manke*, 328 N.W.2d 799, 801 (N.D.1982). Statutory interpretation is a question of law, which is fully reviewable on appeal. *Nelson v. Johnson*, 2010 ND 23, ¶ 12, 778 N.W.2d 773. Words used in statutes are to be understood in their ordinary sense unless a contrary intention is apparent. N.D.C.C. § 1–02–02. Statutes should be harmonized to give meaning to related provisions and to avoid conflicts between statutes. *Great Western Bank v. Willmar Poultry Co.*, 2010 ND 50, ¶ 7, 780 N.W.2d 437; N.D.C.C. § 1–02–07. When construing statutes, this Court considers "the context of the statutes and the purposes for which they were enacted." *Great Western Bank*, at ¶ 7 (quoting *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719). Statutes and rules are presumed to be constitutional and courts will construe them to be constitutional if possible. *Paluck v. Bd. of Cnty. Comm'rs, Stark Cnty.*, 307 N.W.2d 852, 857 (N.D.1981); N.D.C.C. § 1–02–38(1). "[I]f a statute is susceptible of two constructions, one which will be compatible with constitutional provisions or one which will render the statute unconstitutional, we must adopt the construction which will make the statute valid." *Paluck*, 307 N.W.2d at 856.

[¶ 8] Rule 707, N.D.R.Ev., provides in part:

*Analytical Report Admission; Confrontation*

*(a) Notification to Defendant.* If the prosecution intends to introduce an analytical report issued under N.D.C.C. chs. 19–03.1, 19–03.2, 19–03.4, 20.1–13.1, 20.1–15, 39–06.2, or 39–20 in a criminal trial, it must notify the defendant or the defendant's attorney in writing of its intent to introduce the report and must also serve a copy of the report on the

defendant or the defendant's attorney at least 30 days before the trial.

*(b) Objection.* At least 14 days before the trial, the defendant may object in writing to the introduction of the report and identify the name or job title of the witness to be produced to testify about the report at trial. If objection is made, the prosecutor must produce the person requested. If the witness is not available to testify, the court must grant a continuance.

*(c) Waiver.* If the defendant does not timely object to the introduction of the report, the defendant's right to confront the person who prepared the report is waived.

[¶ 9] Rule 707, N.D.R.Ev., was adopted in response to *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). *See* N.D.R.Ev. 707, Explanatory Note. In *Melendez–Diaz,* the United States Supreme Court held that certificates of analysis, which showed the results of forensic analysis performed on seized substances, were testimonial statements for confrontation purposes. *Melendez–Diaz,* 129 S.Ct. at 2531–32. The Court outlined what qualifies as testimonial:

> *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 2531 (quoting *Crawford v. Washington,* 541 U.S. 36, 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). The Court concluded the certificates constituted affidavits and therefore were testimonial because they were "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *Melendez–Diaz,* 129 S.Ct. at 2532 (quoting *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354). Additionally, the certificates were made under circumstances which would lead an objective, reasonable witness to believe the certificates would later be used at trial, and "under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance[.]" *Melendez–Diaz,* 129 S.Ct. at 2532 (quoting Mass. Gen. Laws, ch. 111, § 13 (2004)) (emphasis in original). *See Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 2232–33, 2265–66, 183 L.Ed.2d 89 (2012) (plurality opinion) (Kagan, J., dissenting) (reaffirming the testimonial nature of the certificates in *Melendez–Diaz* because they were created solely to provide evidence against the defendant). Absent a showing that the analysts who prepared the certificates of analysis were unavailable for trial and the defendant had a prior opportunity to cross-examine them, the defendant was entitled to confront the analysts at trial. *Melendez–Diaz,* 129 S.Ct. at 2532. The Court clarified its holding:

> Contrary to the dissent's suggestion, ... we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," ...

this does not mean that everyone who laid hands on the evidence must be called.

*Id.* at 2532, n. 1. The Court also held that a defendant's ability to subpoena an analyst does not abrogate the prosecutor's obligation under the Confrontation Clause to produce the analyst. *Id.* at 2540. The Court acknowledged the validity of notice-and-demand statutes, which require the prosecution to notify the defendant of its intent to introduce an analytical report, after which the defendant may object to admission of the report without the analyst's appearance at trial. *Id.* at 2541.

[¶ 10] The Supreme Court recently revisited *Melendez–Diaz* in *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In *Bullcoming,* the defendant was arrested for driving under the influence. *Bullcoming,* 131 S.Ct. at 2709. At trial, the State presented a forensic lab report certifying the defendant's blood-alcohol concentration was over the legal limit. *Id.* Rather than calling the analyst who prepared and signed the certification, the State called a different analyst who was familiar with the lab's testing procedures but did not participate in or observe the test performed on the defendant's blood sample. *Id.* The Court held this procedure violated the defendant's confrontation right because the certified report was testimonial and the State did not produce the analyst who certified the report. *Id.* at 2710. The Court rejected the argument that the report was nontestimonial because it determined the report was created for an evidentiary purpose as part of a police investigation. *Id.* at 2717. *See Williams,* 132 S.Ct. at 2233, 2265–66 (plurality opinion) (Kagan, J., dissenting) (reiterating that the report in *Bullcoming* was testimonial because it was a signed document created to prove facts in a criminal proceeding). The Court also concluded the fact that the report was unsworn was not dispositive in determining if the report was testimonial, and the formalities accompanying the report, including the preparer's signature, were more than adequate to make the report testimonial. *Bullcoming,* 131 S.Ct. at 2717.

[¶ 11] Rule 707, N.D.R.Ev., must be interpreted in light of N.D.C.C. § 39–20–07, which governs the admission of analytical reports into evidence, because the rule and the statute are interconnected regarding analytical reports, as demonstrated by the language of the rule. *See* N.D.R.Ev. 707(a) (referencing N.D.C.C. ch. 39–20 as one of the chapters under which an analytical report may be introduced into evidence). Significantly, the legislature intertwined analytical reports and blood draws within N.D.C.C. § 39–20–07, requiring us to include blood draws, as well as analytical reports, in our interpretation of N.D.R.Ev. 707.

[¶ 12] Section 39–20–07, N.D.C.C., provides in part:

> *Interpretation of chemical tests.* Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any individual while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol concentration or presence of other drugs, or a combination thereof, in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible. For the purpose of this section:
>
> . . .
>
> 5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly adminis-

tered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

. . .

8. A certified copy of the analytical report of a blood or urine analysis referred to in subsection 5 . and which is issued by the director of the state crime laboratory or the director's designee must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5.

. . .

10. A signed statement from the individual medically qualified to draw the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of this evidence may be required.

N.D.C.C. § 39–20–07(5), (8), and (10). Under this statute, an analytical report is admissible if the State can establish: (1) the blood sample was properly obtained; (2) the blood test was fairly administered; (3) the method and devices used in testing the sample were approved by the State Toxicologist; and (4) the blood test was performed by an authorized individual or by a person certified by the State Toxicologist as qualified to perform the test. N.D.C.C. § 39–20–07(5); *Schlosser v. N.D. Dep't of Transp.*, 2009 ND 173, ¶ 9, 775 N.W.2d 695.

[¶ 13] Prior to *Melendez–Diaz* and N.D.R.Ev. 707, an analytical report could be received into evidence without testimony under N.D.C.C. § 39–20–07. *See State v. Schwab*, 2008 ND 94, ¶ 8, 748 N.W.2d 696; *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). The Court noted in *Jordheim:*

> The report of a blood-test must be admitted under NDCC 39–20–07(8), even without the testimony of the chemist performing the test, if the proper foundation is developed. . . . For a blood-alcohol test, the technician who drew the blood need not testify, if a written statement of the technician is introduced showing that the sample was drawn according to the methods approved by the State Toxicologist. NDCC 39–20–07(5) and (10).

*Jordheim*, 508 N.W.2d at 881. *Melendez–Diaz* established that a defendant was entitled to confront the individual who prepared the analytical reports because the reports were testimonial statements. *Melendez–Diaz*, 129 S.Ct. at 2532. That holding essentially negates the shortcut provisions of N.D.C.C. § 39–20–07(5) and (8) as to the admission of an analytical report if the defendant objects to admission of the report without the analyst's testimony, as exemplified by the adoption of N.D.R.Ev. 707.

[¶ 14] But, under the statute, a prerequisite to admission of an analytical report is a signed statement from the individual medically qualified to draw the blood sample that the blood sample was properly drawn. N.D.C.C. § 39–20–07(5) and (10); *Schlosser*, 2009 ND 173, ¶ 9, 775

N.W.2d 695. Section 39–20–07(10), N.D.C.C., provides: "[a] signed statement from the individual medically qualified to draw the blood sample for testing as set forth in [N.D.C.C. § 39–20–07] subsection 5 is prima facie evidence that the blood sample was properly drawn[.]" Rather than a foundational requirement, *see State v. Gietzen*, 2010 ND 82, ¶¶ 16–19, 786 N.W.2d 1, *State v. Friedt*, 2007 ND 108, ¶¶ 7, 10–11, 13, 735 N.W.2d 848, we conclude the "signed statement" contemplated under N.D.C.C. § 39–20–07(10) constitutes a testimonial statement. The signed statement is akin to an affidavit, which is testimonial, *see Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354, because it is a "solemn declaration or affirmation made for the purpose of establishing or proving" that the blood sample was properly obtained. *Melendez–Diaz*, 129 S.Ct. at 2532 (quoting *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354). The fact that the signed statement is unsworn is not dispositive in determining if the statement is testimonial. *Bullcoming*, 131 S.Ct. at 2717. Also, as in *Melendez–Diaz*, the sole purpose of the signed statement in subsection 10 is to establish prima facie evidence that the blood sample was properly drawn. N.D.C.C. § 39–20–07(10); *see Melendez–Diaz*, 129 S.Ct. at 2532.

[¶ 15] The signed statement contemplated under N.D.C.C. § 39–20–07(10) is a testimonial statement. *See Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354. Therefore, the individual who signs such a statement is a witness for confrontation purposes and the defendant is entitled to be confronted with that individual at trial unless the individual is unavailable and the defendant had a prior opportunity for cross-examination. *Melendez–Diaz*, 129 S.Ct. at 2532. We presume statutes and rules are constitutional, and we will construe them to be constitutional if possible. *Paluck*, 307 N.W.2d at 857; N.D.C.C. § 1–02–38(1).

Statutes and rules should be harmonized to give meaning to related provisions. *Great Western Bank*, 2010 ND 50, ¶ 7, 780 N.W.2d 437; N.D.C.C. § 1–02–07. With these principles in mind, we conclude N.D.R.Ev. 707, when construed with N.D.C.C. § 39–20–07 and the constitutional rights it provides, requires the State to produce the individual who drew the defendant's blood sample if the defendant objects under N.D.R.Ev. 707(b) and identifies the individual who drew the defendant's blood as a witness to be produced at trial. We note this area of jurisprudence has continued to develop since N.D.R.Ev. 707 was adopted in 2011. *See Bullcoming*, 131 S.Ct. 2705; *Williams*, 132 S.Ct. 2221. To the extent our previous cases, such as *Gietzen*, 2010 ND 82, 786 N.W.2d 1, and *Friedt*, 2007 ND 108, 735 N.W.2d 848, are inconsistent with our holding today, they are overruled.

[¶ 16] The Nebraska Supreme Court recently analyzed the same issue under its statutory framework. *State v. Sorensen*, 283 Neb. 932, 814 N.W.2d 371 (Neb.2012). Nebraska's relevant statutes are similar to North Dakota's laws. In Nebraska, the admission of a certificate of the individual who collects a defendant's blood sample is governed by Neb.Rev.Stat. 60–6, 202, which provides in part:

> *Driving under influence of alcoholic liquor or drugs; blood test; withdrawing requirements; damages; liability; when.*
>
> (1) Any physician, registered nurse, other trained person employed by a licensed health care facility or health care service defined in the Health Care Facility Licensure Act, a clinical laboratory certified pursuant to the federal Clinical Laboratories Improvement Act of 1967, as amended, or Title XVIII or XIX of the federal Social Security Act, as amended, to withdraw human blood for

scientific or medical purposes, or a hospital shall be an agent of the State of Nebraska when performing the act of withdrawing blood at the request of a peace officer pursuant to sections 60–6, 197 and 60–6, 211.02. . . .

(2) Any person listed in subsection (1) of this section withdrawing a blood specimen for purposes of section 60–6, 197 or 60–6, 211.02 shall, upon request, furnish to any law enforcement agency or the person being tested a certificate stating that such specimen was taken in a medically acceptable manner. The certificate shall be signed under oath before a notary public and shall be admissible in any proceeding as evidence of the statements contained in the certificate.

Neb.Rev.Stat. § 60–6, 202 (2010). *Compare* N.D.C.C. §§ 39–20–02, 39–20–07(5) and (10). Nebraska also has a statute similar to N.D.C.C. § 39–20–07(5) and (8):

*Driving under influence of alcoholic liquor or drugs; chemical test; violation of statute or ordinance; results; competent evidence; permit; fee.*

(1) Any test made under section 60–6, 197, if made in conformity with the requirements of this section, shall be competent evidence in any prosecution under a state statute or city or village ordinance involving operating a motor vehicle while under the influence of alcoholic liquor or drugs or involving driving or being in actual physical control of a motor vehicle when the concentration of alcohol in the blood or breath is in excess of allowable levels.

. . .

(3) To be considered valid, tests of blood, breath, or urine made under section 60–6, 197 or tests of blood or breath made under section 60–6, 211.02 shall be performed according to methods approved by the Department of Health and Human Services and by an individu-al possessing a valid permit issued by such department for such purpose, except that a physician, registered nurse, or other trained person employed by a licensed health care facility or health care service . . . to withdraw human blood for scientific or medical purposes, acting at the request of a peace officer, may withdraw blood for the purpose of a test to determine the alcohol concentration or the presence of drugs and no permit from the department shall be required for such person to withdraw blood pursuant to such an order. The department may approve satisfactory techniques or methods to perform such tests and may ascertain the qualifications and competence of individuals to perform such tests and issue permits which shall be subject to termination or revocation at the discretion of the department.

Neb.Rev.Stat. § 60–6, 201(1) and (3) (2010).

[¶ 17] In *Sorensen,* the Nebraska Supreme Court considered whether the defendant's right to confrontation was violated when the certificate of the nurse who drew the defendant's blood was admitted at trial without the nurse's testimony. *Sorensen,* 283 Neb. at 933, 814 N.W.2d 371. The defendant was arrested for driving under the influence and submitted to a blood draw, which was conducted by a nurse. *Id.* at 933, 814 N.W.2d 371. After the blood draw, the nurse filled out a certificate indicating the following: the nurse's name; the sample was taken at the request of law enforcement; the name, date, and time of the subject; the sample was taken in a medically acceptable manner; the nurse was qualified to draw the sample under Nebraska law; the antiseptic solution used was nonalcoholic; the sample was collected in a clean container that contained an anticoagulant-preserva-

tive substance; the container was labeled appropriately and initialed by the nurse; and the container was sealed after collection of the sample. *Id.* The defendant's blood sample was tested and found to have a blood alcohol content over the legal limit. *Id.* The State offered the nurse's certificate at trial, and the defendant objected on confrontation and hearsay grounds. *Id.* The objection was overruled and the certificate was admitted into evidence. *Id.* The nurse did not appear as a witness. *Id.* On appeal, the Nebraska Supreme Court held that the nurse's certificate was testimonial and the defendant's right to confrontation was violated when the State was not required to produce the nurse at trial. *Id.* at 938, 814 N.W.2d 371. The court reasoned:

> the nurse's Certificate in this case was clearly testimonial. To begin, it is, at its essence, an affidavit. It was admitted to prove the facts in it, namely that the blood draw was performed in a medically acceptable manner[.] ... Here, the Certificate was the statement of the nurse who actually performed Sorensen's blood draw. This blood was then tested, and those results were used against Sorensen to convict him of DUI. The Certificate itself was filled out at the request of law enforcement under authority of Neb.Rev.Stat. § 60–6, 202 (Reissue 2010), which expressly provides that either law enforcement or the defendant may request such a certificate when a blood draw is performed in connection with an arrest under Neb.Rev. Stat. § 60–6, 197 (Reissue 2010)—one of the charged violations in this case. Section 60–6, 202(2) further provides that the certificate "shall be admissible in any proceeding as evidence of the statements contained in the certificate." Given this, ... it cannot be said that this Certificate and its statements were too attenuated to be testimonial.

*Id.* This reasoning is consistent with our decision and is particularly supportive given the similarities between North Dakota's statutes and Nebraska's laws.

[¶ 18] Rule 707, N.D.R.Ev., which we interpret with N.D.C.C. § 39–20–07, requires the State to produce at trial the individual who drew the defendant's blood sample to satisfy the constitutional requirements of N.D.C.C. § 39–20–07.

## IV.

[¶ 19] The State's petition for a writ of supervision directing the district court to withdraw its pretrial order that held the State was required to produce at trial the individual who drew Bohmbach's blood under N.D.R.Ev. 707 is denied.

[¶ 20] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 21] I concur with Part II of the majority opinion determining this matter is appropriate for exercising our supervisory jurisdiction because the State lacks an adequate remedy for reviewing the question presented. Majority Opinion at ¶ 4. I respectfully dissent from the remainder of the decision concluding N.D.R.Ev. 707 and the United States Constitution Confrontation Clause require the State to produce at trial the nurse who drew blood from defendant, Gwen Bohmbach.

[¶ 22] The majority, of course, correctly explains the recent history of the Confrontation Clause. *See* Majority Opinion at ¶¶ 9–10. Those developments from the United States Supreme Court resulted in this Court adopting Rule 707, N.D.R.Ev. Our rule was adopted to bring North Dakota law in compliance with the standard set in *Melendez–Diaz:* an analytical report

is a testimonial statement, and analysts who prepare an analytical report are witnesses for confrontation purposes and must be produced at trial unless they are unavailable and the defendant had a prior opportunity to cross-examine them. *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 2531–32, 174 L.Ed.2d 314 (2009); *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011); *see* N.D.R.Ev. 707, Explanatory Note ("Sources: Joint Procedure Committee Minutes of September 23–24, 2010, pages 10–13; *Melendez–Diaz v. Massachusetts* [557 U.S. 305], 129 S.Ct. 2527 [174 L.Ed.2d 314] (2009)"). However, the confrontation requirements announced by the United States Supreme Court are not without limits. That Court made clear:

> "Contrary to the dissent's suggestion, ... we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that '[i]t is the obligation of the prosecution to establish the chain of custody,' ... this does not mean that everyone who laid hands on the evidence must be called."

*Melendez–Diaz,* at 2532 n. 1; *see also State v. Gietzen,* 2010 ND 82, ¶ 17, 786 N.W.2d 1.

[¶ 23] Rule 707, N.D.R.Ev., reflects this limitation in the *Melendez–Diaz* holding and does not extend a defendant's confrontation rights to include individuals whose statements "serve the evidentiary function of establishing the propriety of [a defendant's] blood draw[.]" *Gietzen,* 2010 ND 82, ¶ 17, 786 N.W.2d 1; *Melendez–Diaz,* 129 S.Ct. at 2532 n. 1. Notwithstanding the limiting language in *Melendez–*

*Diaz* and notwithstanding our Rule 707 being adopted to conform with and incorporate that limitation, the majority reaches its decision by a combined reading of Rule 707 and N.D.C.C. § 39–20–07(10).

[¶ 24] Section 39–20–07(10) provides, "A signed statement from the individual medically qualified to draw the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of this evidence may be required." We have long recognized the procedures in N.D.C.C. § 39–20–07 are "to ease the requirements for the admissibility of chemical test results while assuring that the test upon which the results are based is fairly administered." *See City of Bismarck v. Bosch,* 2005 ND 12, ¶ 6, 691 N.W.2d 260, *reh'g denied, cert. denied,* 545 U.S. 1141, 125 S.Ct. 2980, 162 L.Ed.2d 890 (2005) (citing *Lee v. North Dakota Dep't of Transp.,* 2004 ND 7, ¶ 10, 673 N.W.2d 245). Our case law confirms N.D.C.C. § 39–20–07(10) is aimed at easing the foundational requirements connected with prosecuting driving under the influence of alcohol cases. Those foundational requirements are just the type of "chain of custody, authenticity of the sample, or accuracy of the testing device" concerns that the United States Supreme Court said in *Melendez–Diaz* did not implicate the Confrontation Clause. *Melendez–Diaz,* 129 S.Ct. at 2532 n. 1.

[¶ 25] I also note we have specifically rejected the argument that a defendant's confrontation rights under *Melendez–Diaz* include confrontation of the nurse who drew the defendant's blood. *Gietzen,* 2010 ND 82, ¶ 19, 786 N.W.2d 1 ("The district court did not err in admitting Form 104 [containing the nurse's statements] or the deputy state toxicologist's certification because those evidentiary documents laid a

foundation for the admission of [defendant's] chemical analysis and because they did not attempt to directly prove an element of the charged offense."). We should not voluntarily retreat from our holding, and I do not read either *Melendez–Diaz* or *Bullcoming* as requiring us to do so.

[¶ 26] Rule 707, N.D.R.Ev., speaks specifically to the analytical report, and the amendment to the rule was intended to include individuals who worked on the analytical report. Those requirements are consistent with the holdings in both *Melendez–Diaz* and *Bullcoming*. By concluding otherwise, I believe the majority has vaulted from following the United States Supreme Court's interpretation of the Constitution to joining Nebraska in breaking a trail into uncharted wilderness. *See State v. Sorensen*, 283 Neb. 932, 814 N.W.2d 371 (2012); Majority Opinion at ¶¶ 16–17. By following Nebraska, I believe the majority goes beyond the constitutional requirements established in *Melendez–Diaz* and *Bullcoming*, and it unnecessarily elevates the evidentiary dignity of the nurse's signed writing to the level of a "testimonial" document. Doing so, the majority opens the door to arguments that the Confrontation Clause applies to acts in a criminal case where a signature or attestation is required or used in handling evidence— such as United States mail return receipts, commercial overnight package delivery confirmations or even evidentiary chain of custody logs. Those arguments were rejected at the federal level in *Melendez–Diaz*, 129 S.Ct. at 2532 n. 1, but apparently have been given new life in North Dakota's effort to apply that same law.

[¶ 27] I would grant the petition for a supervisory writ and direct the district court to vacate the portion of its pretrial order holding N.D.R.Ev. 707 requires the State to produce at trial the nurse who drew Bohmbach's blood.

[¶ 28] Dale V. Sandstrom concurs.