2013 ND 121

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Lindsay SEVERINSON, Defendant and Appellant.**

**No. 20130004.**

Supreme Court of North Dakota.

July 18, 2013.

Dawn Marie Deitz, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Chad Rory McCabe, Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Lindsay A. Severinson appeals a district court judgment convicting her of driving under the influence after entering a conditional guilty plea. Severinson argues the district court erred by admitting an analytical report containing the results of Severinson's blood test because the State could not produce the forensic scientist who peer reviewed the analytical report. We affirm.

I

[¶ 2] Severinson was charged with driving under the influence of alcohol in violation of N.D.C.C. § 39–08–01. Severinson's blood was drawn and submitted for analysis. Amber Vetter, a forensic scientist for the North Dakota Crime Laboratory, performed the blood analysis and included her findings in the analytical report. Severinson objected to admission of the analytical report under N.D.R.Ev. 707, arguing the State was required to produce Ahmad Akhtar, the individual who conducted the peer review of Vetter's analytical report. The State could not produce Akhtar.

[¶ 3] On December 6, 2012, the district court held a hearing on Severinson's motion in limine seeking to suppress the analytical report to determine whether the State would be required to produce Akhtar. The district court concluded Akhtar's peer review of the analytic report did not contain testimonial statements. Therefore, the State was not required to produce Akhtar at trial, the analytical report was not suppressed and Severinson's motion was denied. Severinson entered a conditional guilty plea, reserving the right to appeal the order denying her motion in limine.

II

[¶ 4] "We review a district court's decision on a motion in limine for an abuse of discretion." *State v. Lutz,* 2012 ND 156, ¶ 3, 820 N.W.2d 111 (quotation omitted). "A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner or if it misinterprets or misapplies the law." *Id.* "Our standard of review for a claimed violation of a constitutional right, including the right to confront an accuser, is de novo." *Id.* (quotation omitted).

III

[¶ 5] Severinson argues the district court erred in denying her motion because N.D.R.Ev. 707 and the Confrontation Clause of the Sixth Amendment to the United States Constitution require the State to produce Akhtar at trial. She argues the analytical report should not have been admitted into evidence absent the presence of Akhtar at trial.

[¶ 6] Rule 707(a), N.D.R.Ev., requires the State to notify the defendant in writing if the State intends to introduce an analytical report under the shortcut procedures outlined in ch. 39–20, N.D.C.C. If the defendant timely objects, the State "must produce the person requested." N.D.R.Ev. 707(b). The rule was adopted in response to the United States Supreme Court's holding in *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). *See* N.D.R.Ev. 707, Explanatory Note and Sources. There, the Supreme Court held certificates of analysis showing the results of a forensic analysis on seized substances were testimonial for confrontation purposes. *Melendez–Diaz,* at 311, 129 S.Ct. 2527. Testimonial statements are inadmissible unless the witness appears at trial. *Id.* The Court described the class of testimonial statements as:

"*ex parte* in-court testimony or its functional equivalent—that is, material such

as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id.* at 310, 129 S.Ct. 2527 (quotation omitted). The Court limited its holding, explaining, "[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Id.* at 311 n. 1, 129 S.Ct. 2527.

[¶ 7] The Court further explained its *Melendez–Diaz* holding in *Bullcoming v. New Mexico*, ––– U.S. –––, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). There, the State introduced a forensic lab report certifying the defendant's blood alcohol content was over the legal limit. *Id.* at 2709. The State called an analyst who was familiar with the testing procedures instead of the analyst who conducted the analysis and created the report. *Id.* at 2710. The Court held this procedure violated the Confrontation Clause because the certified report was testimonial. *Id.* The Court explained the fact the statement was unsworn did not mean it was not testimonial. *Id.* at 2717.

[¶ 8] We have explained the relationship between N.D.R.Ev. 707, N.D.C.C. § 39–20–07 and the Confrontation Clause in several cases. First, in *State, ex rel. Roseland v. Herauf*, a majority of this Court held a defendant is entitled to con-

front the nurse who performs a blood draw. 2012 ND 151, ¶ 18, 819 N.W.2d 546. There, the defendant "was arrested for driving under the influence and submitted to a blood draw, which was conducted by a nurse." *Id.* at ¶ 2. The State notified the defendant of its intent to introduce the analytical report, and the defendant sent the State a subpoena to serve on the nurse who performed the blood draw. *Id.* The State argued it was not required to produce the nurse under N.D.R.Ev. 707 because the nurse had no knowledge of the analytical report. *Herauf,* at ¶ 2. The district court concluded the State was required to produce the nurse, and the State petitioned for a supervisory writ. *Id.* at ¶ 1.

[¶ 9] This Court explained, "Rule 707, N.D.R.Ev., must be interpreted in light of N.D.C.C. § 39–20–07, which governs the admission of analytical reports into evidence, because the rule and the statute are interconnected regarding analytical reports, as demonstrated by the language of the rule." *Herauf,* 2012 ND 151, ¶ 11, 819 N.W.2d 546. Due to the intertwining of analytical reports and blood draws within N.D.C.C. § 39–20–07, both were included in the interpretation of N.D.R.Ev. 707. *Herauf,* at ¶ 11. Under N.D.C.C. § 39–20–07, an analytical report is admissible if the State can establish: "(1) the blood sample was properly obtained; (2) the blood test was fairly administered; (3) the method and devices used in testing the sample were approved by the State Toxicologist; and (4) the blood test was performed by an authorized individual...." *Herauf,* at ¶ 12. However, the shortcut provisions of N.D.C.C. § 39–20–07 essentially were negated by *Melendez–Diaz* because it established the defendant has the right to confront the individual who prepared the analytical report. *Herauf,* at ¶ 13.

[¶ 10]  The majority of this Court concluded the nurse's signed statement that she was medically qualified to draw a blood sample was testimonial. *Herauf,* 2012 ND 151, ¶ 15, 819 N.W.2d 546. "[U]nder the statute, a prerequisite to admission of an analytical report is a signed statement from the individual medically qualified to draw the blood sample that the blood sample was properly drawn." *Id.* at ¶ 14. "[W]e conclude the 'signed statement' contemplated under N.D.C.C. § 39–20–07(10) constitutes a testimonial statement." *Herauf,* at ¶ 14. "The signed statement is akin to an affidavit, which is testimonial ... because it is a 'solemn declaration or affirmation made for the purpose of establishing or proving' that the blood sample was properly obtained." *Id.* (quotation omitted). "[T]he sole purpose of the signed statement in subsection (10) is to establish prima facie evidence that the blood sample was properly drawn." *Id.* Thus, the State was required to produce the nurse at trial. *Id.* at ¶ 18.

[¶ 11]  Next, in *State v. Lutz,* a majority of this Court reaffirmed the holding that the State was required to produce the nurse who performs the blood draw, but held that the State was not required to produce the analyst who prepared the volatiles solution used in a chemical test. 2012 ND 156, ¶ 14, 820 N.W.2d 111.  Unlike in *Herauf,* we explained, "We note there is no statute similar to N.D.C.C. § 39–20–07(10) that addresses the analyst who prepared the volatiles solution used in the chemical test, making our analysis under that statute as to the individual who drew the blood sample inapplicable on this issue." *Lutz,* at ¶ 6. The defendant conceded at oral argument that the witness would not have commented about the analytical report and that "her testimony would be limited to her preparation of the volatiles solution, which relates to the chain of custody or the accuracy of the testing procedure." *Id.* at ¶ 8. "There is nothing in the record to suggest that the solution or the statement were prepared under circumstances that would lead [the analyst] or an objective witness to reasonably believe the solution or statement would be used for prosecutorial purposes at a later trial.... " *Id.* We noted, as is the case here, "the State is not seeking to introduce this document into evidence." *Id.* We concluded the State was not required to produce the analyst at trial. *Id.* at ¶ 14.

[¶ 12]  Finally, we held in *State, ex rel. Madden v. Rustad* that the State was not required to produce the Director of the State Crime Laboratory at trial. 2012 ND 242, ¶ 19, 823 N.W.2d 767.  There, the defendant was arrested for driving under the influence of alcohol and submitted to a blood draw. *Id.* at ¶ 2. The State notified the defendant of its intent to introduce the analytical report from the blood test, which had been certified by a forensic scientist. *Id.* The defendant objected to admission of the analytical report under N.D.R.Ev. 707(b), arguing the State was required to produce the director at trial. *Rustad,* at ¶ 2. The State moved to allow introduction of the report without producing the director. *Id.* The district court ruled the State was required to produce the director under the plain language of N.D.R.Ev. 707. *Rustad,* at ¶ 3.

[¶ 13]  We directed the district court to vacate its order, concluding the director's certification of the analytical report was not a testimonial statement. *Rustad,* 2012 ND 242, ¶ 19, 823 N.W.2d 767. We again noted, "There is no statutory language like the language in N.D.C.C. § 39–20–07(10), which requires the Director to make testimonial statements in the prima facie evidence established under the evidentiary shortcuts in N.D.C.C. § 39–20–07." *Rustad,* at ¶ 17. "Nothing in the Director's

expected testimony would prove the substance of the results of the analytical report, or that the blood sample was properly drawn." *Id.* The State was not required to produce the director because the record "[did] not establish the Director conducted or otherwise participated in the blood analysis or made any testimonial statements in analytical reports." *Id.*

[¶ 14] Severinson argues the scope of N.D.R.Ev. 707 is broader than the requirements of the Confrontation Clause as described by the United States Supreme Court in *Melendez–Diaz.* We disagree and have explained how *Melendez–Diaz* and subsequent judicial decisions have guided our interpretation of N.D.R.Ev. 707. "Rule 707, N.D.R.Ev., was adopted effective February 1, 2010, to address confrontation issues involving the admissibility of analytical reports in North Dakota courts in response to *Melendez–Diaz.*" *Rustad,* 2012 ND 242, ¶ 13, 823 N.W.2d 767 (citing N.D.R.Ev. 707, Explanatory Note and Sources). "The State need not produce designated persons for confrontation purposes *if those persons do not make testimonial statements in analytical reports.*" *Rustad,* at ¶ 19 (emphasis added).

[¶ 15] The ultimate issue here is whether Akhtar made a testimonial statement in an analytical report. Akhtar's report is brief and includes three comments. First, "Requested: New {REPORT} drafted." Second, "Accepted: I accept the review." Third, "Completed." Severinson argues the statement is testimonial because a peer review of the analytical report is required by the "Approved Method to Conduct Blood Alcohol Analysis" issued by the State Crime Laboratory, which states, "A peer review of the analysis will be performed before the reporting of results." She argues the sole purpose of the report is to establish prima facie evidence the sample was properly obtained and the test fairly administered.

[¶ 16] We disagree. Unlike *Herauf,* no statute similar to N.D.C.C. § 39–20–07(10) discusses the requirement of peer review procedures. Thus, as in *Lutz,* the analysis from *Herauf* is "inapplicable on this issue." *Lutz,* 2012 ND 156, ¶ 6, 820 N.W.2d 111. The issue here falls more squarely within our reasoning in *Lutz* and *Rustad,* where we held the State was not required to produce the witnesses. As in *Lutz,* Akhtar's testimony would be limited to his review of Vetter's analytical report, "which relates to the chain of custody or the accuracy of the testing procedure." *Lutz,* at ¶ 8. Similarly, like the director in *Rustad,* nothing in Akhtar's testimony "would prove the substance of the results of the analytical report." 2012 ND 242, ¶ 17, 823 N.W.2d 767. Therefore, Akhtar's report was not testimonial and the State was not required to produce him under N.D.R.Ev. 707 and the Confrontation Clause.

IV

[¶ 17] The district court judgment is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.